JOHN F. MONTIGNANI, as Administrator with Will Annexed, Appellant and Respondent, *v.* MARY Y. STAATS BLADE et al., Appellants and Respondents.

When in a testamentary gift of personal property the word "heirs" is used, this is to be taken to mean those in the line of distribution, *i. e.*, the next of kin, and where the will shows on its face that the person whose heirs are referred to was to the knowledge of the testator living at the time of the execution of the will, the word refers to those who would be the next of kin were the ancestor deceased.

The holographic will of S. contained a clause which, after a bequest to a son of the testator of certain shares of stock, proceeded as follows: "To be held in trust by my executors ten years from and after my decease, then to be delivered and transferred to them; if deceased, do and continue the same to his son William, now in his eighth year; if both are deceased before the ten years have expired, then transfer and deliver the said shares to my daughters." The clause then named two daughters and provided that if either was deceased her portion should be transferred to the survivor, and in case of the death of both, to a daughter-in-law named or her heirs. In an action to obtain a construction of the will, *held,* that there was no unlawful suspension of the power of alienation ; that the suspension was not for an arbitrary and fixed period, nor was the trust so limited, but both inevitably terminated upon the expiration of the two named lives, and could only run for the ten years on condition that one or both of the selected lives continue so long.

By another clause of the will certain shares of stock were given to a daughter-in-law of the testator to be held "in trust seven years" from his death for the benefit of the daughter-in-law and her daughter, and then to be transferred and delivered to the latter. In case of the death of the grandchild before the expiration of the seven years, it was provided that "this bequest to her shall be given and transferred to her mother;" if both die, then "to the heirs" of a son of the testator. *Held,* that the trust was measured by two lives in being at its creation, and so was valid; that by the provision for the ultimate vesting of the stocks in the "heirs" of the testator's son, those who would be next of kin if he were dead were intended.

By another clause the testator gave to M., a daughter, a house and lot with the furniture therein "for her occupancy and use," the same (using the language of the will) "to be held in trust by my executors seven years from and after my decease," also certain shares of stock, the dividends to be collected and paid to the daughter. At the expiration of the seven years it was provided that "the foregoing bequests shall be transferred and delivered to" M. If M. should die before the expiration of the seven years it was provided that "these bequests shall be delivered

to or disposed of " as a daughter and a son of the testator named " shall request and direct," the proceeds to be paid to three persons named. *Held*, that he trust was valid, as it only ran for one life or the shorter period of seven years within that life; that although the testator described ' his disposition as " bequests " it covered the real as well as the personal property; that the provision giving some power or authority to the son and daughter could not be construed as a power of appointment or as conferring upon them any estate, but simply made them arbitrators in case of any disagreement between the three beneficiaries as to an actual division or a sale and division of the proceeds.

Another clause provided that " from the cash funds " belonging to the testator in a bank named, his funeral and burial expenses and other just claims against him should be paid, and the residue, if any, paid to M. The will was executed in November, 1889. In November, 1890, the testator borrowed $300 from said bank giving his note therefor. In December thereafter he executed to the president and cashier of the bank a formal transfer of ten shares of stock, containing a power of sale which he sent to the transferees with a letter directing them to pay with the proceeds his indebtedness to the bank and pay the balance to M. In 1891 the testator paid the note, but left the stock in the hands of the bank, and soon thereafter procured another loan. At the testator's death there was about $150 to his credit on the books of the bank. *Held*, that the words " cash funds " in the bank included only the balance on deposit to the credit of the testator at his death, and that the stock was transferred simply as collateral.

The second loan had not been paid, but the bank had not resorted to said collateral. M. was the testator's housekeeper, and he was in the habit of giving her money to pay household expenses. The trial court adjudged that an express trust was created in the stock for the benefit of M. *Held*, that this portion of the decision was invalid; that the action being simply for the construction of the will the court had no power to go outside of it, and construe an independent business agreement.

*It seems*, that no trust was created in the stock, nor was there a gift thereof to M.

*Montignani* v. *Blade* (74 Hun, 297), modified.

(Argued February 5, 1895; decided February 26, 1895.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 14, 1893, which modified and affirmed as modified a judgment construing the will of Bernardus E. Staats, deceased, entered upon a decision of the court on trial at Special Term.

This action was brought for a construction of the will of Bernardus E. Staats, deceased. The provisions of the will in question are as follows :

"I hereby bequeath and give to my son, Bernardus E. Staats, all my shares of stock in Wells, Fargo & Company Express, to be held in trust by my executors ten years from and after my decease, then to be delivered and transferred to him, if deceased do and continue the same to his son William, now in his eighth year of age. The dividends shall be collected, when and as declared, by my executors until transferred and delivered and paid to my son, or, if deceased, to his son William ; if both are deceased before the ten years have expired, then transfer and deliver the said shares to my daughters, Lydia Ann Staats, and Mary Yates Staats, each share and portion equal. If either daughter is deceased, her portion shall be transferred and delivered to the remaining daughter. If both are deceased, then this bequest shall be given to my daughter-in-law, wife of my son John H. Staats, or their heirs, and my daughter-in-law Harriet Staats, or her heirs, each share and portion equal.

"I bequeath and give to my daughter-in-law Harriet Staats, widow of my deceased son, William Staats, fifty shares of American Express Company stock, to be held in trust seven years from my decease, for my grandchild, her daughter, Bella T. Staats, then to be transferred and delivered to this daughter ; the income, *i. e.*, dividends, shall be collected by and paid to either mother or daughter, for mutual support and benefit ; if the said daughter is deceased before the expiration of the seven years, then this bequest to her shall be given and transferred to her mother ; if both mother and daughter are deceased before the seven years have expired, then this bequest shall be transferred and delivered to the heirs of my son, John H. Staats.

"I hereby bequeath to my daughter, Mary Yates Staats, the house and lot No. 52 Elm street, now occupied by myself, also all the furniture and housekeeping articles and utensils therein, for her own occupancy and use, to be held in trust

by my executors seven years from and after my decease.    I
also bequeath to said daughter all my shares of stock in the
New York Central and Hudson River Railroad Company;
the dividends, when declared, shall be collected by my execu-
tors and paid to said daughter.    At the expiration of the
seven years the foregoing bequests shall be transferred and
delivered to said Mary Yates Staats, as and when so requested
by her and practicable.    If this daughter is deceased before
the expiration of the seven years these bequests shall be
delivered to, or disposed of, as my daughter, Lydia Anna
Staats, and my son, John H. Staats, shall request and direct;
the proceeds shall be paid to my daughter, Lydia Anna
Staats, and my daughter-in-law Willa F. C. Staats and my
daughter-in-law Harriet Staats, each share and portion alike,
as near as can be done and satisfactory to all concerned."

"From the cash funds belonging to myself in the First
National Bank, Albany, pay funeral and burial expenses and
other just claims against myself, the residue or balance, if
any, pay to my daughter, Mary Yates Staats."

The further facts, so far as material, are stated in the
opinion.

*Eugene D. Flanigan* for Harriet Staats and others, appel-
lants and respondents.    The trusts created in and by the
second and third disposing clauses of said last will, being
separate and distinct from every other portion of said last
will, as well as being separate and distinct from each other,
should be treated, each, as if it were the sole clause for review
before this court.    (3 Jarman on Wills, 709 ; Perry on Trusts
[4th ed.], § 724; *Kane* v. *Gott*, 24 Wend. 646–666 ; *Parks*
v. *Parks*, 9 Paige, 107–117 ; *DeKay* v. *Irving*, 5 Den. 646 ;
*Long* v. *Kopke*, 5 Sandf. 363–371 ; *Van Vechten* v. *Van
Vechten*, 8 Paige, 120 ; *Kennedy* v. *Hoy*, 105 N. Y. 134;
*Culcross* v. *Gibbons*, 130 id. 447–452 ; *Underwood* v. *Curtis*,
127 id. 523 ; *Oxley* v. *Lane*, 35 id. 340 ; *Harrison* v. *Harrison*,
36 id. 543 ; *Schettler* v. *Smith*, 41 id. 328 ; *Knox* v. *Jones*, 47
id. 389–395.)    In both the second and third disposing clauses

of said last will, the testator disposed simply of personalty, and the trusts created in and by both the second and third disposing clauses were of personalty. Such trusts have never been hampered by the limitations which the statute attaches to real property, except as to the suspensive power of the absolute ownership, beyond two lives in being at the time of the creation of the trusts. No particular form of words is necessary to create such trusts. The statute is satisfied where there is no suspension beyond two lives in being. (Perry on Trusts [4th ed.], § 86; *Day* v. *Roth*, 18 N. Y. 448; *Gilman* v. *McArdle*, 99 id. 451; *Martin* v. *Funk*, 75 id. 134; *Young* v. *Young*, 80 id. 422; *Horner* v. *Sidway*, 124 id. 539–550; *In re Carpenter*, 131 id. 86; *Cochran* v. *Schell*, 140 id. 516; *Tilden* v. *Greene*, 130 id. 29; *Gilman* v. *Reddington*, 24 id. 9; 3 R. S. 2179, § 40; *Savage* v. *Burnham*, 17 N. Y. 561; *Phelps* v. *Pond*, 23 id. 69; *Schermerhorn* v. *Cotting*, 131 id. 48–61; *Williams* v. *Williams*, 8 id. 538.) The trusts created in and by the second and third disposing clause of said last will and testament, are legal, valid and subsisting trusts, even though for a term of years, because each is dependent on not more than two lives in being at the time of the creation of the trust, and the death of the *cestuis que trust* at any time before the expiration of the fixed period for vesting in them, terminates the trust, and vests the remaindermen with the absolute ownership of the *corpus* of the trust. (*Crook* v. *County of Kings*, 97 N. Y. 421; *Bailey* v. *Bailey*, Id. 460; *Bind* v. *Pickford*, 141 id. 18; *Gilmore* v. *Ham*, 142 id. 1; *Gilman* v. *Reddington*, 24 id. 9; *Schermerhorn* v. *Cotting*, 131 id. 48–50; *Phelps* v. *Pond*, 23 id. 69.) In construing these second and third clauses of this will, it is the duty of the court to construe all parts of each together, so as to make a lawful and consistent whole. And if one sentence is ambiguous, and a sentence in another part of the clause is capable of explaining and making clear and lawful what testator meant to express in the first sentence, then it is the duty of the court to construe the first sentence, by aid of the light which may be shed upon it by the succeeding sentence. (*Bird* v.

*Pickford*, 141 N. Y. 18; *In re N. Y., L. & W. R. Co.*, 105 id. 92; *Stokes* v. *Wiston*, 142 id. 433; *Miller* v. *Gilbert*, 144 id. 68–74; *Emery* v. *Sheldon*, 68 id. 256; *Burnon* v. *Burnon*, 55 id. 351; *Lamb* v. *Lamb*, 131 id. 237; *Thomas* v. *Snyder*, 43 Hun, 14; *Lytle* v. *Beverage*, 58 id. 592.) The law of perpetuity is not transgressed in the third disposing clause. (*Rose* v. *Hatch*, 125 N. Y. 427; *Bundy* v. *Bundy*, 38 id. 410–418; *Green* v. *Green*, 125 id. 507; *Smith* v. *Van Ostrand*, 64 id. 278.) It is the duty of the plaintiff herein to transfer and deliver the fifty shares American Express Company stock to Harriet immediately. (*Wager* v. *Wager*, 96 N. Y. 164; *Cross* v. *U. S. T. Co.*, 131 id. 330; *Woodward* v. *James*, 115 id. 346.) Even though the ulterior limitations over are void, such voidness cannot affect either of the trusts created in the second and third disposing clauses, if otherwise valid, and the legal title to the respective funds disposed of in the second and third clauses remains in the trustees, subject to the execution of trust. (*Hillen* v. *Iselin*, 144 N. Y. 365; Lewin on Trusts, 249; Fletcher on Trustees, 48; Powell on Devises, 221, note 7; *Brewster* v. *Striker*, 2 N. Y. 33; *Irving* v. *McCay*, 9 Paige, 33; *Hawley* v. *James*, 5 id. 481; *Goynton* v. *Hoyt*, 1 Den. 53; *Van Vechten* v. *Van Vechten*, 8 Paige, 128; *Huxton* v. *Corse*, 2 Barb. Ch. 92; *Williams* v. *Williams*, 8 N. Y. 538; *Kilpatrick* v. *Johnson*, 15 id. 324; *Phelps* v. *Pond*, 23 id. 80, 82; *Gilman* v. *Reddington*, 24 id. 19; *Levy* v. *Hart*, 54 Barb. 262; *Manice* v. *Manice*, 43 N. Y. 303; *Green* v. *Green*, 125 id. 506–510.) The renunciation of the executor and trustee, under the last will, of the offices of both executor and trustee, and the appointment of plaintiff as administrator with the will annexed, does not invest plaintiff with the powers of trustee. Such trustee must be appointed by the court. (*Kirk* v. *Kirk*, 137 N. Y. 510; *Cook* v. *Platt*, 98 id. 39; *Lahey* v. *Cortright*, 132 id. 450; *Walter* v. *Carpenter*, 137 id. 86.)

*George H. Stevens* for Mary Y. Blade, appellant and respondent. This is an autographic will, inartificially drawn,

regardless of or in ignorance of technical rules, or of the artificial and technical meaning of terms. Such construction should be given as is required by the terms and general scope of the will, and the manifested and express intent of the testator. (*Lytle* v. *Beveridge*, 58 N. Y. 592; *Post* v. *Hover*, 33 id. 593; *Stokes* v. *Weston*, 142 id. 433.) The intent of the testator was that his daughter Mary, for seven years after his death, should have the benefit and income of the real estate 52 Elm street, Albany, N. Y., and his New York Central stock; if this daughter was living at the expiration of the seven years she was to take said real estate and stock absolutely; if the daughter Mary should die within the seven years, then immediately upon her death within the period named the real estate and stock was to be disposed of and the proceeds thereof divided equally between his daughter Lydia Anna Staats and his daughters-in-law Harriet Staats and Willa F. C. Staats. (*Greene* v. *Greene*, 125 N. Y. 512; *Roe* v. *Vingut*, 117 id. 204.) The provisions for the benefit of the daughter Mary, contained in the fourth disposing clause of the will, are not in contravention of the statutes against perpetuities and the unlawful accumulation of personal property. (Bolles on Susp. Power Alien. 62, § 87; *Schermerhorn* v. *Cotting*, 131 N. Y. 48; *Oxley* v. *Lane*, 35 id. 345, 346; *Matteson* v. *Matteson*, 51 How. Pr. 276; *Buchanan* v. *Tebbetts*, 69 Hun, 81; 1 R. S. 723, § 14; *Beardsley* v. *Hotchkiss*, 96 N. Y. 215; *Gott* v. *Cook*, 7 Paige Ch. 521; *Bradley* v. *Hotchkiss*, 96 N. Y. 215.) The testator's provisions for his daughter Mary Yates Staats (now Mary Y. S. Blade), contained in the fourth disposing clause of the will, are valid. (*Harrison* v. *Harrison*, 36 N. Y. 547, 548; *In re Williams*, 64 Hun, 163; *Roe* v. *Vingut*, 117 N. Y. 204; *Henderson* v. *Henderson*, 113 id. 15; *Moore* v. *Moore*, 47 Barb. 257; *Blanchard* v. *Blanchard*, 4 Hun, 287; 8 N. Y. 615; *Oxley* v. *Lane*, 35 id. 345, 346; *Bowditch* v. *Ayrault*, 138 id. 222; 4 Kent's Com. 9; *Mayor, etc.*, v. *Stuyvesant*, 17 N. Y. 34, 39, 41; *Leonard* v. *Burr*, 18 id. 96; *Warner* v. *Durant*, 76 id. 133; *Smith* v. *Smith*, 141 id. 29.) The tes-

tator, by delivering the stock with power to sell same and letter as to proceeds, created a trust of the Central National Bank stock for the benefit of his daughter Mary, subject to the payment of his indebtedness to the First National Bank of Albany. (*Gilman* v. *McArdle*, 99 N. Y. 451; *Martin* v. *Funk*, 75 id. 134; *Stone* v. *Hackett*, 12 Gray, 230; *Millard* v. *Clark*, 80 Hun, 141; *Goven* v. *de Miranda*, 140 N. Y. 474.) The defendant, Mary Y. Staats Blade, is entitled to such relief in this action as her rights under the will entitled her to, even though she may have demanded too much in her prayer for judgment herein, or if the relief asked by her may be erroneous. (*Frear* v. *Pugsley*, 9 Misc. Rep. 316.) If the court should find that a valid trust of either the realty or personalty devised or given to the daughter Mary has been created, the powers and rights conferred on the executors in the will do not pass to the plaintiff as administrator with the will annexed. (Redf. Surr. Pr. [4th ed.] 375.)

*Isaac H. Maynard* and *Robert G. Scherer* for Willa F. C. Staats, appellant and respondent. The provision in what is termed the third paragraph of the will is void, because it unlawfully suspends the absolute ownership of the personal property therein attempted to be bequeathed. (*Emmons* v. *Cairns*, 3 Barb. 243; *Mills* v. *Husson*, 104 N. Y. ——; *Cook* v. *Lowry*, 95 id. 103; *Delafield* v. *Shipman*, 103 id. 463; *Graff* v. *Bennett*, 31 id. 13; *Williams* v. *Thorn*, 70 id. 270; *Cutting* v. *Cutting*, 86 id. 544; *In re Russell*, 5 Den. 388; *Hawley* v. *James*, 16 Wend. 61; *Shettler* v. *Smith*, 41 N. Y. 328; *Knox* v. *Knox*, 47 id. 389; *Shipman* v. *Rollins*, 98 id. 311; *Cross* v. *U. S. Trust Co.*, 131 id. 330; *Underwood* v. *Curtis*, 127 id. 523; *Rice* v. *Barrett*, 102 id. 161; *Robert* v. *Corning*, 89 id. 235.) The trial court erred in holding that the testator intended to and did create an express trust of the Central National Bank stock for the benefit of his daughter Mary Y. Staats, and constituted Van Allen and Rowell trustees thereof. (*Butler* v. *Dupont*, 19 J. & S. 77; *Young* v. *Young*, 80 N. Y. 438; *Curry* v. *Powers*, 70 id. 212; *Jack-*

son v. T. T. S. R. R. Co., 88 id. 520; Neufville v. Thompson, 3 Edw. Ch. 92; In re Crawford, 113 N. Y. 560.)

George H. Mallory for plaintiff, respondent and appellant. Testator created no trust in favor of Mrs. Blade. (Holland v. Alcock, 108 N. Y. 317; Chace v. Perkins, 130 Mass. 128; Perkins v. Perkins, 134 id. 441; Long v. Palmer, 118 U. S. 321; R. L. Works v. Kilby, 88 N. Y..229; Young v. Young, Id. 488.) It is decisive that there is no claim made, nor can be, that Mrs. Blade, the alleged beneficiary of this imaginary trust, was ever informed of her name being used in connection with this loan or the stock or any disposition of the proceeds thereof. She received none of the dividends, although such were declared and paid between November, 1890, and June, 1891. She was unaware of the loan, of the power of attorney and of the letter, and so cannot claim as donee. (Orr v. McGregor, 43 Hun, 528; Beaver v. Beaver, 117 N. Y. 421.) There was no such delivery of the Central Bank stock to Mrs. Blade, or to any person for her, as sufficed to divest the possession and title of Mrs. Staats, or effectuate a gift. (Young v. Young, 80 N. Y. 423; Curry v. Powers, 70 id. 212; Meigs v. Meigs, 15 Hun, 453; In re Crawford, 113 N. Y. 560.) As Mrs. Blade had not taken the subject-matter of the alleged trust into her possession, the alleged donor, Staats, had a right to resume possession, revoking the gift. This revocation is clearly shown by several acts, principally by Staats collecting the interest coupons and by his paying the secured note from his other funds. (Whiting v. Barrett, 7 Lans. 106.) The claim that this stock is contemplated in that clause under the term " cash funds belonging to myself in the First National Bank " is untenable. (Bumpus v. Bumpus, 79 Hun, 526; Stimson v. Vroman, 99 N. Y. 79.)

FINCH, J. This action is brought to settle the construction of the last will of Bernardus E. Staats, deceased. The validity of the first disposing clause, which gives to his daughter Lydia Ann his stock in the Fourth National Bank of New York, is

not disputed or open to any doubt. But several of the bequests following have been declared invalid.

The testator's second bequest is to his son Bernardus, and consists of Wells, Fargo & Co. Express stock, but with the following limitation, viz.: "To be held in trust by my executors ten years from and after my decease, then to be delivered and transferred to him ; if deceased, do and continue the same to his son William, now in his eighth year of age. The dividends shall be collected when and as declared by my executors until transferred and delivered and paid to my son, or, if deceased, to. his son William ; if both are deceased before the ten years have expired, then transfer and deliver the said shares to my daughters Lydia Ann Staats and Mary Yates Staats, each share and portion equal. If either daughter is deceased, her portion shall be transferred and delivered to the remaining daughter. If both are deceased, then this bequest shall be given to my daughter-in-law, wife of my son John H. Staats, or their heirs, and my daughter-in-law Harriet Staats or her heirs, each share and portion equal." The testator drew his own will, and this disposition is, in some respects, awkwardly expressed, and yet is not of doubtful meaning. The Special Term pronounced the bequest invalid upon the ground that a trust for ten years was created which suspended the absolute ownership of the stock for a longer period than two lives in being. The General Term reversed that conclusion and adjudged the disposition to be valid and effectual. The appellate tribunal was clearly right. The suspension was not for an arbitrary or fixed period, nor was the trust so limited. Both were bounded by the two lives of Bernardus, the son, and William, the grandson. Explicitly and in terms it is declared that, if both die within ten years, then the stock is to vest at once in certain named persons. The trust in such event necessarily ends, although the ten years have not expired, and is inevitably terminated by the expiration of the two named lives, both in being when the will took effect. In substance, the trust is for two lives or a shorter period, and cannot, in any event, exceed their duration. It

can run for ten years only on condition that one or both of
the selected lives continue so long. If they do, the trust ends
and the gift vests during such lives, but at the end of the fixed
period ; if they do not, the vesting at once occurs, although
the fixed period has not expired. There is, therefore, no
undue suspension of the absolute ownership of the stock as a
consequence of the trust created, and the General Term cor-
rectly decided that the bequest was valid and effectual.
(*Schermerhorn* v. *Cotting*, 131 N. Y. 48.) The dividends
declared upon the stock are to be collected by the adminis-
trator and paid over when collected to the beneficiaries, as
directed ; to the son Bernardus, if living, and, if not, to the
grandson William ; such payments to continue during the
running of the trust. If at the end of ten years Bernardus is
living the stock becomes his ; if he is dead at that date, but
the grandson is living, the stock will be his ; if both be dead
at that date or earlier, it will go absolutely to the remainder-
men. The interests of Lydia and Mary appear to be contin-
gent upon their survival respectively at the period which shall
end the trust. If at that date the one be dead the remainder
goes to the other ; if both are dead it goes over to the
daughters-in-law and their heirs respectively, and in equal
shares.

The third disposition of the will was pronounced void by
the General Term for reasons which we are unable to appre-
ciate. Its form is almost exactly like that of the previous
bequest which was held valid, and differs only in the fact that
the fixed period is seven years instead of ten. It creates a
trust for the benefit of the daughter-in-law, Harriet, and her
daughter Bella, and provides that for seven years the income
shall be paid to them for mutual support and benefit, but if
Bella lives to the end of the seven years the stock goes to her ;
if she dies before that period it goes to Harriet ; but if both
be dead before the expiration of the seven years then it vests
at once and absolutely in the heirs of the testator's son John.
Here, again, there is no trust which must continue seven years,
but one measured by the two lives of Harriet and Bella, at the

end of which it will inevitably vest, but may vest earlier and within those lives by force of the fixed period which terminates the trust, although the selected lives continue. The same considerations which induced the General Term to hold valid the prior bequest should have operated to preserve this one which is equally valid and effectual. It is true that the testator in providing for the ultimate vesting gave the stock to the "heirs" of his son John, and since John is living and strictly can have no heirs until his death, it is argued that the vesting is postponed for the further life of John. But where the bequest is of personal property the word heirs is taken to mean those in the line of distribution, or the next of kin; and where the will shows on its face that the person whose heirs are referred to is, to the knowledge of the testator, at that time living, it is obvious that it is not used in its strict technical sense, but means in the case of land, heirs apparent, or those who would be the heirs were the living ancestor deceased, (*Heard* v. *Horton*, 1 Den. 168), and, in the case of personal property, next of kin, who would be such were the ancestor deceased, (*Cushman* v. *Horton*, 59 N. Y. 151.) In this will the son John is twice spoken of as living, and once in a connection which implies his active interference, and, since the intent to vest the remainder absolutely is manifest, we must take the word "heirs," as used by this unskilled testator drawing his own will, to mean those who, if John were dead, would be his heirs or next of kin. There is thus no difficulty in holding that the absolute ownership was not postponed beyond the required two lives.

The fourth disposition of the will was deemed invalid as creating an unlawful suspension both by the Special and General Term. With one exception it is framed in the same general manner as the two which immediately precede it. It disposes of the house and lot on Elm street and the furniture therein, and also of testator's New York Central stock, and puts them in trust for seven years, provided the single life of his daughter Mary shall continue so long. The trust, therefore, runs for one life or the shorter period of seven years

within that life.   If Mary lives beyond that term the house
and lot and stock become hers, but it is explicitly provided
that if she dies before the expiration of the seven years the
property shall vest in the daughter Lydia, and the two
daughters-in-law Willa and Harriet.   Although the testator
describes his disposition as bequests it evidently covered the
real as well as the personal property.   During the running of
the trust up to its termination at the end of seven years, or its
earlier termination by the death of Mary, she is to have the
use and occupation of the house and lot, and the dividends on
the stock.   If she survives the seven years both become hers
absolutely, but if she dies before that period the trust does
not continue, but ends at once, and the remainder takes effect.
I think that is so notwithstanding an interjected clause, not
appearing in the previous dispositions and peculiar to this one
alone.   The whole limitation of the remainder is in these
words : " If this daughter is deceased before the expiration of
the seven years these bequests shall be delivered to or dis-
posed of as my daughter Lydia Anna Staats and my son John
H. Staats shall request and direct ; the proceeds shall be paid
to my daughter Lydia Anna Staats, and my daughter-in-law
Willa F. C. Staats, and my daughter-in-law Harriet Staats,
each share and portion alike as near as can be done, and satis-
factory to all concerned."   Obviously the interjected clause
which gives some power or authority to the daughter Lydia
and the son John cannot be construed as a power of appoint-
ment or as conferring upon them any estate, for that would
be repugnant to the disposition which the testator himself
proceeds to make of the entire estate in remainder to the three
persons named.   His use of the word "proceeds" and the
situation of the property indicate his real meaning.   He fore-
saw that the house and lot, the furniture and belongings, and
the Central stock might not be easy of division into the con-
templated thirds.   The devisees might disagree as to the value
of the land or the terms on which it should be sold, or the
division of the Central stock, and as to whether there should
be an actual division or a sale and division of proceeds.   The

testator desired, without affecting his devise and bequest in remainder, which he proceeds at once to make, to put the necessary division under the advice and direction of Lydia and John, making them arbiters of the differences which might arise, and that is the sole effect of the interjected phrase. Their preference as to the manner of division, if not unfair to the rights devised and bequeathed, should guide the conclusions of the parties or of the court in the event of disagreement, but their choice will not be conclusive since it is plainly subordinate to an actual and just division between the three, and is a provision intended merely to aid and assist in reaching that ultimate result and not at all to mar or defeat it. The suggestion is in line with many other similar expressions in the will adding the " request " of legatees to the fact and time of payment, and ordering the division into thirds " satisfactory to all concerned." The testator desired peace to follow his death and not war, and sought to reach it. There is no just reason for destroying this fourth disposition, and we hold it to be valid and effectual.

The fifth disposition of the will makes Willa F. C. Staats residuary devisee and legatee, and is followed by a clause which the General Term has construed in a manner which we approve, but accompanied with a further decision which we do not approve. It reads thus : " From the cash. funds belonging to myself in the First National Bank Albany pay funeral and burial expenses and other just claims against myself; the residue or balance, if any, pay to my daughter Mary Yates Staats." The extrinsic facts proved were that on the 25th day of November, 1890, the testator borrowed three hundred dollars from the First National Bank of Albany and gave his note therefor. On the 8th of December following he executed, in the usual manner, a formal transfer to Van Allen, the president, and Rowell, the cashier of the loaning bank, of ten shares of the capital stock of the Central National Bank of New York city, and containing the ordinary power of sale. He sent that by mail to the transferees, accompanied by a letter stating the transfer and adding : " With the

proceeds pay my indebtedness to the First National Bank Albany, N. Y., and the balance to pay my daughter, Mrs. Mary Yates Blade, wife of Wm. Blade, Jr." The transfer was plainly intended as collateral to secure the bank for its loan. Early in 1891 he paid up the note, leaving the collateral in the hands of the bank, and soon thereafter borrowed again, presumably upon the security of the same collateral. The last loan has not been paid, but the bank has not sold the stock or resorted to its collateral to enforce payment. Mrs. Blade was testator's housekeeper, and he was in the habit of giving her money to enable her to meet the current household expenses. There was, at the date of his death, a cash balance of about one hundred and thirty dollars standing to his credit on the books of the bank. The will was executed in November of 1889, and before the transfer of this collateral. On this state of facts the Special Term adjudged that an express trust was created for Mrs. Blade covering the stocks transferred as collateral, and which constituted Van Allen and Rowell trustees of such trust property. The trial court also adjudged that the "cash funds belonging to testator in the First National Bank, Albany, were only the sum of $130.84 there on deposit to his credit." This last was a perfectly correct conclusion, and within the scope of the action, because determining the construction of the phrase "cash funds," as used in the will. But beyond that the court had no right to go. The action was for the construction of the will, and gave no power to travel outside of it and pass upon the construction of an independent business agreement, and that, too, without bringing in the bank, which may have rights against the stock, or the individuals who are burdened with the trust. That part of the judgment impressing a trust upon the stock should, therefore, be reversed ; but in view of the situation of the parties, and in the hope of averting needless litigation, we deem it proper to add that, in our opinion, no trust whatever was created in the stock transferred as collateral ; that Van Allen and Rowell were not made, and did not become, trustees of an express trust, and that the claim of

Mrs. Blade cannot be sustained upon that ground, nor as a gift, because unexecuted. (*Young* v. *Young*, 80 N. Y. 438.)

It follows, therefore, that all of the dispositions of the will are valid and effectual, that the judgment of the General Term so far as it destroys any of them, and so far as it affirms the judgment of the Special Term impressing a trust upon the stock held as collateral be reversed and judgment be entered in accordance with the conclusions of this opinion, the costs of all parties to be paid out of the estate. The form of the judgment to be entered, in case of disagreement, may be settled before the judge writing the opinion.

All concur.

Judgment accordingly.