In the Matter of the Estate of ANNIE P. WARD, Deceased.

Surrogate's Court, Kings County, January 27, 1938.

*Harold L. Godwin,* attorney *pro se,* as executor, etc., accountant.

*Showers, Jason & Quinn* [*Peter J. Quinn* of counsel], for the objectant Richard J. Berry.

*Alfred H. Holbrook,* for Harriet C. Green and Helen G. Clearman, residuary legatees, objectants.

WINGATE, S. The basic question here involved concerns the meaning to be attributed to the language used by Lewin B. Ward, a Massachusetts citizen, in his will, which was probated in that

Commonwealth in the year 1927. No question of the validity of the instrument is raised, the sole issue relating to the quantum of the authority which, under the language employed, he intended to give to his wife, who is the present decedent.

The several opponents have exhibited an extraordinary diligence in the discovery and citation of Massachusetts decisions involving the interpretation of the meaning and effect of the language of other wills possessing a more or less superficial resemblance to the present. They have not, however, advanced the contention that the language in vogue in that revered Commonwealth is other than the customary English tongue, and despite occasional invidious statements, possibly emanating from persons laboring under the presently popular affliction known as " inferiority complex," that the mode of speech in the capital of that Commonwealth differs materially from that elsewhere in use, the court is unwilling to take judicial notice of any such difference, if any there be, and concludes that in the absence of a factual demonstration, here absent, that the connotation of the words of our common language differs, the meaning which is to be attributed to them by the courts in both localities is identical.

One additional deficiency in the presentation is that none of the opposing parties has tendered any testimonial demonstration or citation tending to indicate that the courts of Massachusetts possess any conception respecting the interpretation of the meaning of testamentary language differing from that in vogue in most other jurisdictions as well as in the State of New York in the particulars that no will has a twin brother in consequence of which particular precedents construing the phraseology of individual wills are wholly worthless criteria of decision in cases involving different wording or the situations of other individuals (*Matter of Watson*, 262 N. Y. 284, 297; *Matter of Bump*, 234 id. 60, 63), and that the ultimate rule of interpretation of any such document is the wish of the testator as it may be gleaned by the court from an analysis of the script in its entirety. (*Matter of Buttner*, 243 N. Y. 1, 6; *Matter of Rooker*, 248 id. 361, 364; *Matter of Lyons*, 271 id. 204, 209.)

On the contrary, a Massachusetts affirmance of the former principle is inherent in the determination in *Ford* v. *Ticknor* (169 Mass. 276, 280, 281; 47 N. E. 877), while the latter is expressly asseverated in *Old Colony Trust Co.* v. *Richardson* (—— Mass. ——; 7 N. E. [2d] 432, 434), decided less than ten months ago.

The controversy, therefore, resolves itself merely into one as to what this particular testator, Lewin B. Ward, had in mind when he, in March, 1927, used the following language:

" (1) After payment of my debts and the costs of administering my estate I give, devise and bequeath all the rest, residue and remainder of my property, real, personal or mixed, of every name, nature and description and wherever situated, to my beloved wife, Annie P. Ward, in trust, she to have the right to use therefrom during her lifetime such portion as she considers proper and necessary for her support and maintenance or for any other purpose for which she may desire to use said property or any portion thereof.

" (2) If upon the death of the said Annie P. Ward any portion of the property acquired by her under the preceding paragraph of this will then remains undisposed of, I dispose of this remaining property as follows:

" (a) I give and bequeath to Richard Berry of Brooklyn, New York, if he is then living, the sum of five thousand dollars ($5000).

" (b) I give and bequeath one-half of said property then remaining to Harriet C. Green   *   *   *   and the other half of said property then remaining I give and bequeath to Helen Clearman."

The remaining pertinent facts are simple and amply established. The widow duly qualified as executrix and continued in that capacity until the date of her death.  She executed a will which has been probated in this county under which the same Harriet C. Green and Helen Clearman are the residuary legatees, and which made no reference to the will of her husband.

Among the items of property which came into the possession of her executor was a first mortgage on certain real property in Brooklyn, N. Y., in the sum of $20,000, which still stands in the name of the present decedent as ancillary administratrix of the estate of her husband.  In addition to this, certain shares in George Wastenholm & Son, Ltd., listed in Schedule A of the present account of the executor of the widow, aggregating $6,112.50 in value, were received by her from her husband's estate.

The present issue lies wholly between Richard Berry on the one hand and Harriet Green and Helen Clearman on the other.  It is the contention of the former that the authorization given by Lewin Ward to his widow was merely for use and disposal of the assets of his estate during her lifetime and that the mortgage and shares being still in her possession at the time of her death are subject to the payment of his $5,000 legacy.  The ultimate remaindermen under both wills assert that the language of the gift to the widow was broad enough to cover disposal by her by will and that such disposal was made by the terms of her testamentary document.

The court is unable to concur in the position of the latter parties. The dominant purpose of the husband, as is wholly evident from his

entire will, was to provide without limit for the "support and maintenance" of his widow "during her lifetime." To that end he authorized her "during her lifetime" to dispose of any property which might come into her hands from his estate. Subject only to this dominant purpose, he wished Richard Berry to receive the $5,000 expressly allotted to him.

Unquestionably the widow might, in her lifetime, have conveyed any part of the property belonging to her husband's estate for any real or fancied personal necessity or to satisfy any individual whim. Upon her death, however, this authority terminated. No conveyance was made by her in respect of the specified items prior thereto, since her will became effective only after the expiration of her life and consequently upon the termination of the period, namely, "during her lifetime," during which she was authorized to make such disposal.

This interpretation of a limitation of her authority to one to dispose by conveyances which would take effect "during her lifetime" is further emphasized by the gift over "of any portion of any property acquired by her" which remains "undisposed of" "upon the death of the said Annie P. Ward."

The court, therefore, determines that the mortgage and shares of stock in question not having been disposed of, *i. e.*, conveyed, by the widow during her lifetime, were, at the time of her death, still held "in trust" by her under the will of Lewin B. Ward, are still assets of his estate and are properly deliverable to his administrator *c. t. a.*, *d. b. n.*, for the purpose of distribution in accordance with the terms of his will.

In its discretion, the court will allow costs, and an allowance pursuant to the final paragraph of section 278 of the Surrogate's Court Act, to Richard Berry from the estate as a whole, the amount thereof to be determined upon the submission of the decree.

Enter decree on notice in conformity herewith.