In the Matter of the Accounting of the UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee under the Will of EMILY A. WATSON, Deceased, Respondent.

HARVEY A. DWIGHT et al., Appellants; JEAN B. DWIGHT et al., Respondents.

(Argued June 14, 1933; decided July .11, 1933.)

*C. Alexander Capron, H. Vincent Smart* and *William F. Hamilton* for Herwarth von der Decker, appellant and respondent.

*Frank L. Wiswall* and *A. Kendall Roberts* for Harvey
A. Dwight et al., appellants.

*William S. Siemon* for Eleanor H. Marihugh et al., appellants.

*E. Sheldon Stewart, William A. W. Stewart* and *Arthur McCausland* for United States Trust Company of New York, as executor of John W. Dwight, deceased, appellant.

*Vermont Hatch* and *Windsor B. Putnam* for Jean B. Dwight et al., respondents.

*Edgar G. Wandless* and *Berwick B. Lanier* for Pauline
A. de G. J. de la Mettrie et al., respondents.

*Howard Thayer Kingsbury* and *Thomas W. Kelly* for Victoire L. Niel, respondent.

CRANE, J.   The order of the Appellate Division modifying the decree of the Surrogate must itself be modified in a particular hereafter stated, and as thus modified will be affirmed.

This will has been here before (*Dwight* v. *Fancher*, 245 N. Y. 71), and this appeal again calls for an interpretation of the instrument.   In fact, the respondents insist that

the prior decision is *res adjudicata* in this proceeding, but as parties are now before the court who were not in that litigation, the decision is rather an authority than a binding judgment here.

Emily A. Watson died February 1, 1924, a resident of Westchester county, leaving a very large estate, and a last will and testament wherein she made twenty-three specific bequests, ranging from $10,000 to $75,000 each, and creating five trusts in sums of $25,000 to $75,000 each, for the benefit of persons named. She was a spinster, eighty years of age; at the time of her death, with no nearer relatives than cousins. She had a sister who predeceased her, leaving no children.

Harvey A. Dwight and George W. Pratt (cousins), mentioned in the residuary clause of the will, hereinafter quoted, had been in business with her father, and Miss Watson evidently desired to make recognition of the relationship by bequests to the respective families. She seems to have been unfamiliar with the children and grandchildren of these two gentlemen, for there are omissions in her will which can be accounted for by nothing in the history of Miss Watson's life. The omissions must be due, so far as we can tell, to an ignorance or forgetfulness upon her part of her remote relatives or the oversight of herself or the lawyer of the possible consequences arising from the language used.

The tenth clause of the will, to which we are now coming, and which is the cause of all this litigation, reads as follows:

" *Tenth.* All the rest, residue and remainder of my property, both real and personal, of whatever kind or nature and wherever situate, as well that which I may hereafter acquire as that which I now possess, I give, devise and bequeath to the United States Trust Company of New York, in trust, however, to divide the same into as many shares or portions as there may be children of my cousin, Harvey A. Dwight, and grandchildren of my

cousin, George W. Pratt, surviving at the time of my death, and to invest and keep invested one such share or portion for the benefit of each child of my said cousin, Harvey A. Dwight, and each grandchild of my said cousin, George W. Pratt, then surviving, and to pay over the income and profits therefrom to the child or grandchild for whose benefit such fund is so held, during his or her natural life, and upon his or her death to pay over and deliver the principal of the fund with all accumulated income to his or her issue, *per stirpes*, and in default of such issue, I direct that the same be divided equally between said surviving children and grandchildren, and the issue of any who may have died, *per stirpes*."

Our decision in *Dwight* v. *Fancher* was in an action brought to obtain a construction of this tenth paragraph. Harvey A. Dwight had five children, one of whom died before Miss Watson, leaving two children who survived her. These grandchildren, Harvey A. Dwight and Jessie R. Dwight Orage, were the plaintiffs in the action, and they claimed that the law gave them the same share as their father, Harvey L. Dwight, would have taken if he had survived Miss Watson. The only answer that could possibly be made to their very just claim was the will itself. This left them out by its clear and exact language. The court would very gladly have interpreted this will so as to include them within the benefits of this tenth paragraph if it could have done so with any legal justification. No reason whatever was advanced in the *Dwight* case nor has any been advanced here for the action of Miss Watson. Neither can we imagine that she had any desire or intention to omit any of these relatives who appeared before the court in the *Dwight* case or who are now before us in this litigation. We have, however, only one rule to follow — it is fundamental. The intention of a will-maker is to be found in the words used in the will, and when these are clear and definite there is no power to change them. The Legislature has

the power to restrict the disposition of property and has done so regarding certain gifts to charity and as to the amount which must be left to the widow. But beyond such limitations a person may will his property as he pleases, and the courts are to carry out the directions, not add to, or take from them. The very full, complete and helpful briefs which have been submitted in this case contain many canons of construction to guide courts in the interpretation of wills, but these apply only when the language is ambiguous or doubtful.

We, in our short opinion (245 N. Y. 71), said that Miss Watson's will admitted of but one construction; in other words, that her directions were very clear, and confined the division of the trust into as many shares as there were children of Harvey A. Dwight surviving at the time of her death. Harvey L. Dwight had died in 1910 and was not surviving when Miss Watson died; therefore, neither he nor his children, the plaintiffs in the *Dwight* case, took a share under this residuary clause. Every one naturally feels that the will should have been the other way, but courts do not make wills, and lawyers should draft them with such care that these results cannot happen unless foreseen and intended. The intention of one who makes a will can only be gathered after death from the instrument itself. We did not feel free to say that Miss Watson meant to include a child who had died before she did, when she had distinctly confined the shares to the children " surviving at the time of my death." She may have known what she was doing — who can tell? What guide have we to follow except the words of Miss Watson? Our own personal inclinations, which we share with the attorneys for the appellants, are not to influence us. Whether the will be a mistake or was intended as written no one will ever know, for none of the circumstances give us any light. Canons of construction to which appeal is made are never used to force language out of a will.

Our decision in the *Dwight* case, therefore, is equally binding upon Herwarth von der Decken and Elizabeth Graeffin Finch von Finckenstein, children of Elizabeth Bleecker von der Decken, a grandchild of George W. Pratt, who died November 24, 1907, before Emily A. Watson. The grandchild of George W. Pratt, Elizabeth Bleecker von der Decken, was not surviving at the time of Miss Watson's death. This is the reason for our opinion in the case of *Dwight* v. *Fancher*, and the reason still holds good for this case, including the interpretation of the last clause of the tenth paragraph, which is now brought up for construction and interpretation for the first time.

The trusts set up by the United States Trust Company of New York were seven in number. Four children of Harvey A. Dwight and three grandchildren of George W. Pratt survived the testatrix. One of these trust shares was created and held for John W. Dwight, a son of Harvey A. Dwight. He died in 1931, leaving a last will and testament wherein he virtually bequeathed his estate to his brother-in-law, Herbert O. Bailey, or his issue. Bailey had married his sister, for whom one of the trusts had been set up under the tenth clause of Miss Watson's will. John W. Dwight had a one-seventh interest or share in Miss Watson's large residuary estate. What becomes of it? Miss Watson tells us. She says that the income from this one-seventh interest or share is to be paid to John W. Dwight for life. She did not name him in the will, but she designated him as a child of Harvey A. Dwight " surviving at the time of my death." Upon the death of John W. Dwight, without issue, she said, " I direct that the same be divided equally between said surviving children and grandchildren, and the issue of any who may have died, *per stirpes*." To whom do the words, " any who may have died," refer? By our decision in the *Dwight* case we held that this will created seven distinct trusts, four for the children of Harvey A.

Dwight and three for the grandchildren of George W. Pratt who survived the testatrix. There was inequality in this disposition because the issue of a child, Harvey L. Dwight, who had died before the testatrix, were thus excluded; in other words, the offspring of a dead child were not provided for. Nevertheless, this was the will. It centered upon children and grandchildren who survived Emily A. Watson. This was the class she had in mind. These were the individuals for whom trusts were created with the same distinctness and clarity as if she had named them. " Children and grandchildren " became synonyms for the individual names. One of these trusts terminates by the death of John W. Dwight, and we find the testatrix still clinging to the basic distinction, " children and grandchildren." Had John W. Dwight left a child, we would not have this discussion. The child would take his share, the principal of the trust fund. The appellants, the descendants of Harvey L. Dwight and Elizabeth Bleecker von der Decken, would not then be claimants, for it is conceded that they would have no shadow of a claim under such circumstances. That the testatrix never had Harvey L. Dwight or Elizabeth Bleecker von der Decken, who predeceased her, or their children, in mind, is quite evident from the previous interpretation of this will, and also from their complete exclusion should John W. Dwight or any of the other surviving children or grandchildren die leaving issue. No help, therefore, is gathered from any apparent intention of the testatrix which will justify our turning these last words of paragraph ten from their natural meaning.

Miss Watson divided her residuary estate into as many shares as " there may be children of my cousin, Harvey A. Dwight, and grandchildren of my cousin, George W. Pratt, surviving at the time of my death." Here the words " children and grandchildren " are confined to those surviving the testatrix. The income from the

shares is to be paid over to the children or grandchildren for whose benefit such fund is held during his or her natural life. Upon the death of the child or grandchild, the principal is to be paid over and delivered to his or her issue, and in default of such issue, " I direct that the same be divided equally between said surviving children and grandchildren." If this had been the end of the clause, would there be any doubt as to the meaning of this provision of the will? " Said surviving children and grandchildren " are the seven taking the residuary at the death of Miss Watson. I do not see how the words can possibly mean any thing else. We have not only the words, " said children," but the " said surviving children," which removes all doubt as to the individuals intended. The additional phrase, " and the issue of *any* who may have died," according to its grammatical as well as natural meaning, refers to *any* of said surviving children and grandchildren who may have died since the creation of the trust or the death of the testatrix. Outside of a desire to do what we think Emily A. Watson should have done, we find nothing to justify us in changing this plain meaning into one which would make the word " any " refer to a child or grandchild who had died *before* the testatrix. All the canons of construction, so ably briefed by counsel for the appellants, are not applicable where the words are plain and simple and the meaning clear.

Neither do the authorities construing other wills afford us any aid except for the general principles underlying the interpretation of all documents. The language of each will leads to its own conclusion. No two persons are alike; neither are their wills. Every one has his own peculiar family history, temperament, duties and responsibilities. No two estates are alike. How, then, can we expect one will to be a pattern for another? This is one field where standardization has proved ineffectual. We still take each document on its own merits. Either

for good or ill, a testament has no progeny. Each is a new creation. Thus, *Teed* v. *Morton* (60 N. Y. 502, 505) is not an authority controlling in this case. True, the words, " my surviving children, and the issue of such of them as may have died leaving issue," were held to apply to issue of any child, whether surviving the testator or not. This is very much like Miss Watson's will, and I am not surprised that the appellants so strenuously press it upon our attention, yet in fact, it is not the same because we have, before the words, " surviving children," in Miss Watson's will, the little word " said," and the children and grandchildren about which something was " said " were those only " surviving at the time of my death." So we see how little things often count for much. If as much effort were spent in preparing a will as is devoted to either breaking or construing it, we would not have all these perplexing questions.

We, therefore, affirm the Appellate Division in its holding that the principal of the trust for John W. Dwight must be divided equally between the children and the grandchildren surviving Emily A. Watson, and did not include the issue of any child or grandchild who died before her. The testatrix, not we, has directed the exclusion of the claimants Harvey A. Dwight, Jessie R. Dwight Orage, Herwarth von der Decken and Elizabeth Graeffin Finch von Finckenstein.

The question still remains, whether the estate of John W. Dwight shares in this distribution. Again we look to the will and take it at its face value. He is dead, and the testatrix says, " I direct that the same [that is, his share held in trust] be divided equally between said surviving children and grandchildren." These are a fixed, definite class, and are, Jean B. Dwight, Harriette D. Bailey, Lucia K. Dwight, Comtesse Victoire Louise Niel, Countess Pauline Andre de Gasquet James de la Mettrie, Count George Watson Pratt de Gasquet James. John W. Dwight comes within this designation. The

will reads as if the testatrix had said, " Upon the death of John W. Dwight, I give the principal of his share to his issue, or, in default of issue, to him absolutely." While somewhat unusual for language of this kind to be used, yet it is not illegal or even surprising. We take wills as we find them, and, unless contrary to some statute, give them effect as written. This is what the lawyer who drew the will has caused Miss Watson to say is her intention. (See *Doane* v. *Mercantile Trust Co.*, 160 N. Y. 494; *Wadsworth* v. *Murray*, 161 N. Y. 274; *Matter of Bump*, 234 N. Y. 60; *Matter of Leonard*, 143 Misc. Rep. 172; *Bishop* v. *Bishop*, 257 N. Y. 40.) The legal effect of such language is to give to John W. Dwight a life interest and a vested remainder to be divested upon the coming of issue. There being no issue, the remainder passes to, or remains in, his estate, to be disposed of as other property under his will. The one-seventh of his share received by the living children and grandchildren can by them be given away or disposed of by will. Accordingly, the share held in trust for John W. Dwight is divided equally between the children and grandchildren living at the death of Miss Watson, including himself, that is, his estate. One-seventh goes to each. (Kent's Commentaries, vol. IV, pp. 202 and 203; *Moore* v. *Littel*, 41 N. Y. 66; *Livingston* v. *Greene*, 52 N. Y. 118.)

A remainder is vested when there is a person in being who would have an immediate right to the possession of the property on the termination of all the intermediate or precedent estates. (Real Prop. Law; Cons. Laws, ch. 50, § 40.) Under this definition, and upon the creation of the trusts, there were persons in being having a right to immediate possession of the property, should the trust terminate. All the surviving children and grandchildren were living, and if any died, terminating the trust, the remainder passed to living persons, and in the case of the one dying, his or her one-seventh would pass to his or her issue or estate. (*Stringer* v. *Young*, 191 N. Y. 157, 162.)

The law favors the vesting of estates, and, unless a contrary intention is unequivocally expressed, it will not be imputed. (*Connelly* v. *O'Brien*, 166 N. Y. 406; *Hersee* v. *Simpson*, 154 N. Y. 496.) Again, this interpretation prevents any possibility of there being an intestacy as to the remainder of the last surviving trust share. If the last life tenant should die without leaving issue and there should then be no issue of the other life tenants then living, the testatrix would die intestate as to such last trust fund. The vesting of these remainders, subject to being divested. upon the survival of issue, prevents this very improbable occurrence. (*Matter of McGowan*, 134 Misc. Rep. 409; 228 App. Div. 779; 254 N. Y. 513.) This is the part wherein we differ with the Appellate Division and must modify their order accordingly.

We do, however, further agree with that court and with the Surrogate in the disposition made of the accumulated income. The trustee was directed upon the death of the life beneficiary to pay over and deliver the principal of the fund with all accumulated income to the ultimate remaindermen. There is some $11,000 of accrued income upon the investments which was not yet due upon the date of the death of John W. Dwight, the life tenant. The Surrogate decided that this should be apportioned in accordance with section 204 of the Surrogate's Court Act; that is, the amount due up to the date of his death should go to his estate, and that part accruing thereafter, termed " an accumulation," should go to the remaindermen. This we think a fair and correct interpretation of the will. The above section of the Surrogate's Court Act provides for such an apportionment unless it shall be " *expressly stipulated that no apportionment be made.*" The will contains no express statement that this rule shall not be followed. The reference to " principal and accumulation " is sort of a " stock phrase " and means the accumulation to which the remaindermen are entitled according to law.

For the reasons here expressed, the order of the Appellate Division should be modified in accordance with this opinion, and, as thus modified, affirmed, with costs to all parties filing briefs in this court, payable out of the estate.

POUND, Ch. J., LEHMAN, O'BRIEN and CROUCH, JJ., concur; KELLOGG, J., dissents and votes for affirmance; HUBBS, J., not sitting.

Ordered accordingly.