In the Matter of the Accounting of IRVING TRUST COMPANY et al., as Trustees under the Will of JOSEPH BATTELL, Deceased.

ROSA E. TUTTLE, Appellant; WINIFRED M. SHELDON, as Executrix of ROBERT T. SHELDON, Deceased, et al., Respondents.

Argued May 20, 1941; decided July 29, 1941.

*Dudley Miller* for appellant. The duty of the court is to ascertain the intention of the testator and to carry out such direction. (*Matter of Watson*, 262 N. Y. 284.) The testator intended the principal of the trust fund for each nephew or niece to be paid over on his or her death to the same persons as would inherit the real property of the deceased nephew or niece under the Statute of Descent governing the devolution of the real property of such nephew or niece. (*Matter of Moffitt*, 171 Misc. Rep. 84; 258 App. Div. 992; 283 N. Y. 743; *New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *Matter of Canfield*, 136 Misc. Rep. 551; 231 App. Div. 708; 256 N. Y. 610; *Matter of Winslow*, 138 Misc. Rep. 672; 233 App. Div. 872; 259 N. Y. 550; *Matter of Waring*, 275 N. Y. 6; *Matter of Koch*, 282 N. Y. 462.) The Statute of Descent of the State of Connecticut governing the devolution of the real property should be applied in determining the remaindermen of the trust. (*Cary* v. *Carman*, 116 Misc. Rep. 463;

*Matter of Harned*, 138 Misc. Rep. 546; 234 App. Div. 796.) If the laws of New York govern, article 3 of the Decedent Estate Law (Cons. Laws, ch. 13), as amended by chapter 229 of the Laws of 1929, should be applied in determining membership in the class of heirs at law. (*Matter of Watson*, 262 N. Y. 284; *Matter of Koch*, 282 N. Y. 462; *Matter of Waring*, 275 N. Y. 6; *Matter of Lake*, 170 Misc. Rep. 840.)

*John F. Woods* and *Harter F. Wright* for Isabel B. Griswold, respondent. The testator died a resident of New York and the law of New York should be applied to determine the remaindermen of the trust. (*Matter of Winslow*, 138 Misc. Rep. 672; 233 App. Div. 872; 259 N. Y. 550; *Matter of Devoe*, 66 App. Div. 1; 171 N. Y. 281; *Matter of Angarica*, 157 Misc. Rep. 98; 7 Heaton on Surrogates' Courts [5th ed.], § 568, p. 420; *Cary* v. *Carman*, 116 Misc. Rep. 463.) The law of descent as it existed prior to September 1, 1930, should be applied to determine the membership of the class of remaindermen and the shares and proportions which they will take. (*New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127; *Doane* v. *Mercantile Trust Co.*, 160 N. Y. 494; *Matter of Moynahan*, 158 Misc. Rep. 821; *Central Trust Co.* v. *Skillin*, 154 App. Div. 227; *Matter of Dialogue*, 159 Misc. Rep. 18; *Matter of Waring*, 275 N. Y. 6; *Clark* v. *Lynch*, 46 Barb. 68; *Matter of Lake*, 170 Misc. Rep. 840; *Woodward* v. *James*, 115 N. Y. 346; *Matter of Barker*, 230 N. Y. 364.)

*Clifton P. Williamson* for Evelyn Humphrey, respondent. Determination of the questions involved in this proceeding is governed by the law of New York. (*Matter of Devoe*, 66 App. Div. 1; 171 N. Y. 281; *Matter of Winslow*, 138 Misc. Rep. 672; 233 App. Div. 872; 259 N. Y. 550.) The persons designated in the will as " heirs at law " of the life beneficiary and their respective shares are to be ascertained by reference to the Decedent Estate Law as it exists unamended by chapter 229 of the Laws of 1929 and subsequent legislation. (*New York Life Ins. & Trust Co.* v.

*Winthrop,* 237 N. Y. 93; *Matter of Waring,* 275 N. Y. 6; *Matter of Lake,* 170 Misc. Rep. 840.)

*George W. Martin* for Philip B. Stewart et al., respondents. The remaindermen are the living descendants of the testator's deceased brothers and sisters. (*Matter of Waring,* 275 N. Y. 6; *Matter of Gifford,* 279 N. Y. 470; *Fell* v. *McCready,* 236 App. Div. 390; *N. Y. Life Ins. & Trust* v. *Viele,* 161 N. Y. 11.)

*C. S. Huffman, Jr.,* for Katherine H. Swift, respondent. The Decedent Estate Law as it existed prior to the enactment of chapter 229 of the Laws of 1929 and chapter 599 of the Laws of 1930 is controlling in accordance with the clearly expressed intention of the testator. (*Matter of Waring,* 275 N. Y. 6; *Matter of Lake,* 170 Misc. Rep. 840; *New York Life Ins. & Trust Co.* v. *Winthrop,* 237 N. Y. 93.) The testamentary intention may only be given effect by distribution of the trust estate solely to the paternal side of the family. (*Matter of Barker,* 230 N. Y. 364.)

*F. F. Rehberger* and *Daniel Burke* for Winifred M. Sheldon, as executrix of Robert T. Sheldon, deceased, respondent.

RIPPEY, J. Joseph Battell died while a resident of and domiciled within the State of New York on July 8, 1874, leaving a last will and testament dated February 7, 1868, which was duly admitted to probate in Kings county on August 11, 1874.

By the terms of the will the testator directed that his residuary estate be divided into " so many equal parts shares or portions as there shall be nephews and nieces of mine who are living at my death or who have died before me leaving lawful issue who are then living; And to assign or allot one such share to each nephew, And one such share to each niece, and one such share to the lawful issue of each nephew or niece who may have died before me " and that each such share should be held in trust for the benefit of such nephew or niece or lawful issue of nephews or nieces as to whom the share was applicable for life, "And at his

or her death to assign transfer and pay over the same to his or her lawful issue if any there shall be then living: And if there be no such issue when living, then and immediately upon the decease of such nephew or niece to assign transfer and pay over the same to such person and persons as are *then* by law the lawful ' *heirs-at-law* ' of such nephew or niece and in such shares and proportions as they would by law inherit (as heirs at law) from such nephew or niece."

One of testator's nieces, Ellen Battell Stoeckel, daughter of one of his brothers, was born in Norfolk, Connecticut, on March 10, 1851, and was a resident of and domiciled within the State of Connecticut at the time of her death on May 5, 1939. She took one of the trusts under the will. Upon her death the trustees filed a petition for final judicial settlement of their account as such and for instructions as to whom and in what proportions payment of the corpus of the trust with accumulations should be made and to the end that such a determination might be made a request for construction of the above-quoted provision of the will was made. The *cestui que trust* died without leaving issue her surviving. The Surrogate held that distribution should be made to her heirs at law as defined in subdivisions 6 and 10 of section 83 of the present Decedent Estate Law (Cons. Laws, ch. 13; L. 1929, ch. 229, as amd. by L. 1930, ch. 174, effective September 1, 1930), with the result that the entire remainder should pass to Rosa E. Tuttle, a first cousin of Ellen Battell Stoeckel but no blood relative of the testator. The Appellate Division reversed the Surrogate and held that those sections of the Decedent Estate Law had no application and that the fund passed, upon the death of the *cestui que trust*, under the laws as they existed prior to September 1, 1930, with the result that the property should pass to the heirs of the testator's blood under the authority of *Matter of Waring* (275 N. Y. 6).

It is asserted, at the outset, that the Laws of Connecticut control on any determination as to who the " heirs at law " of Mrs. Stoeckel may be. However, Battell, when he made his will and when he died, was a resident of and domiciled

within New York State and his estate (including the trust in question) has since been administered here and it is here to be distributed. The property does not pass through Mrs. Stoeckel. The circumstance of her death, wherever it might have occurred, merely released the trust property for distribution under the terms of the Battell will. Those and other considerations lead us to conclude that the laws of New York State govern the distribution of the fund in question (*Matter of Devoe*, 66 App. Div. 1, 6; affd., 171 N. Y. 281; *Matter of Winslow*, 138 Misc. Rep. 672, 677; affd., 233 App. Div. 872; 259 N. Y. 550; and see 7 Heaton on Surrogates' Courts [5th ed.], p. 420, § 568; Restatement of Conflict of Laws [Am. Law Inst.], § 296).

It is a primary rule of construction that the courts must find and follow the intent of the testator as disclosed by the words of the will itself (*Matter of Chalmers*, 264 N. Y. 239; *Matter of Durand*, 250 N. Y. 45, 54; *Matter of Watson*, 262 N. Y. 284, 293) if the wording thereof is unambiguous, and there is no ambiguity in connection with the wording of the will here involved. With the exception of certain specific bequests for charitable purposes, not a dollar of the testator's estate was left to other than blood relatives. There is not a word in the will to indicate any intent that the residuary estate or the remainders of the several trusts should pass to strangers of the blood, but on the contrary the will from beginning to end indicates a specific contrary intent. It is clear that the testator intended that the corpus of the trust should pass, in the event that Mrs. Stoeckel should die without issue, to those who would inherit as her heirs at law by the provisions of the law applicable to his will and to his property which were in effect at the time of her death. Sight must not be lost of the fact that it is the estate of Battell that is to be distributed, not the estate of Mrs. Stoeckel. It is the will of Battell that is to be construed and not the will of Mrs. Stoeckel. In unequivocal terms the will provides that the trustees should assign, transfer and pay over the principal of the trusts to such person or persons as are then *by*

*law the lawful heirs* of his niece in such shares and proportions as they would *by law* inherit from her under the law of descent affecting the distribution of his estate. Since the will provides for a gift over to a class on the termination of the intermediate estate of the niece and the will contains no express direction to the contrary, the members of the class and the shares each take must be determined by the applicable statute,— the one in effect as to *his will* and *his* estate at the time of her death (*New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *Matter of Winslow*, 259 N. Y. 550; *Matter of Devoe*, 171 N. Y. 281; *Matter of Waring, supra*).

It has properly been said that the will exhibits skillful draftsmanship. Great care and meticulous accuracy are exhibited in its preparation and wording. There can be no doubt that the testator knew and said exactly what he desired to say. When he said *" the law "* he meant *"* the law *"* and he neither said nor meant that distribution should be made according to some scheme which was not *"* the law *" in effect* at that time. He was providing for the distribution of his own property, not that of his niece and not on any theory *" as if "* it were that of his niece. He intended that distribution of his property should be made according to the provisions of the law in effect at the time of the death of the niece, if she should die without issue, to her lawful heirs at law under such applicable law. He gave the *cestui que trust* no control over the fund and no power to dispose of it. He carefully refrained from providing that the property should be distributed under any power of appointment from her. The will permits of no assumption that the deceased intended that the distribution of his property should be made in accordance with the provision of some law which in specific terms was not in effect as to his will or his property at the time of Mrs. Stoeckel's death. The law of descent at the time the will was made and at the time of the testator's death, of which he was charged with knowledge, would have prohibited the passing of any part of his property to appellant.

What, then, is the applicable law? It is not that contained in the provisions of chapter 229 of the Laws of 1929, as amended by chapter 174 of the Laws of 1930 (as the Surrogate held), but, on the contrary, it is the law in effect on August 31, 1930. That is so by the express mandate of the Legislature. Section 21 of chapter 229 of the Laws of 1929 provides in express terms " that the provisions of sections * * * six " [embracing sections 80–88 of the Decedent Estate Law] * * * * " ten " [amending section 314 of the Surrogate's Court Act] * * * " shall apply only to the estates or wills of persons dying after August thirty-first, nineteen hundred and thirty," but the Legislature did not stop there. To make it doubly clear that there could be no possible doubt as to its intent and purpose and to foreclose any possible construction by the courts that would defeat that intent, the Legislature further added " and the provisions of law affected by such sections in force prior to the taking effect of this act shall apply to the estates and wills of all persons dying prior to September first, nineteen hundred and thirty, with the same force and effect as if they were not hereby amended." Section 14 of chapter 174 of the Laws of 1930 contains provisions in specific terms to the same effect. There is nothing in that language that those who read can fail to understand and no opening is left for construction such as is sought by appellant in this case. The will was made and the testator died long prior to August 31, 1930. As we have said before, it was *his estate* to whose distribution applicable law must be applied. By the express mandate of the statute the law in effect prior to August 31, 1930, is the only law in effect applicable to the distribution of the corpus of the trust in question and requires distribution of the fund to respondents. Nothing to the contrary has been said in *Matter of Waring (supra)*.

There remains a question argued in the Appellate Division which relates to commissions claimed on behalf of a deceased executor. Upon the argument of the present appeal we were advised that all objections to such commissions have

been withdrawn. We regard the question as academic and accordingly have not considered it.

The order should be affirmed, with costs to all parties filing separate briefs payable out of the estate, and the motion to dismiss the appeal should be denied.

LEWIS, J. (dissenting). I dissent from the decision about to be made.

The will of Joseph Battell, which bears date February 27, 1868, and was probated in Surrogate's Court, Kings County, August 11, 1874, is before us for construction. After making substantial bequests in favor of his two brothers, his five sisters and various public, charitable and educational institutions, the testator divided his residuary estate into as many equal shares as there should be nephews and nieces surviving him, or who had predeceased him leaving issue who survived him, one of such shares being allotted to each nephew and niece, or to surviving issue of any deceased nephew or niece, to be held upon a separate trust for the life use of such beneficiary. The last of the trusts thus created terminated when the testator's niece Ellen Battell Stoeckel died on May 5, 1939, a resident of Norfolk, Connecticut.

Ellen Battell Stoeckel was the daughter of the testator's brother, Robbins Battell. She is survived by no relatives closer than cousins. Upon the final accounting by trustees of the fund of which she had life use, the present controversy arose which has led to a judicial construction of the testator's will to determine who are the persons intended by him to receive that fund upon the termination of the intermediate estate.

The Surrogate ruled that, upon a provision of the testator's will, presently to be considered, the trust fund should be distributed to Rosa E. Tuttle, who is not a lineal descendant of a brother or sister of the testator, but is a first cousin of Ellen Battell Stoeckel on her mother's side. The Appellate Division reversed the Surrogate's ruling, rejected the claim of Rosa E. Tuttle, who is the present appellant, and

decided the intention of the testator to be that upon the termination of the intermediate estate the principal of the trust should go to heirs of the Battell blood only — the lineal descendants of the testator's brothers and sisters — who are cousins of the life tenant Ellen Battell Stoeckel on her father's side.

After making provision for the trust funds of which his nephews and nieces were given the life use, the testator directed that upon the termination of such use the distribution of the principal of the trust should be governed in each instance by the following direction: " Second. * * * And at his or her death to assign transfer and pay over the same to his or her lawful issue if any there shall be then living: And if there be no such issue when (sic) living, then and immediately upon the decease of such nephew or niece to assign transfer and pay over the same to such person and persons as are *then* by law the lawful ' *heirs-at-law* ' of such nephew or niece and in such shares and proportions as they would by law inherit (as heirs at law) from such nephew or niece."

It is noteworthy that in the original will the words " *then* " and " *heirs-at-law* " as they appear in the provision quoted above, were underlined by the testator. It should also be said that words in other provisions of the will bore like underlining,— clearly indicating, as I believe, a desire by the testator to give emphasis to words thus marked.

Our inquiry to ascertain the distributees whom the testator intended should take the fund here involved is rewarded by finding in words of his own choice a clear expression of his intention upon that subject. " The intention of a will-maker is to be found in the words used in the will, and when these are clear and definite there is no power to change them." (*Matter of Watson*, 262 N. Y. 284, 293.) Here the testator has expressly provided that when one of the trusts created by him is terminated by the death of a niece without issue, the fund itself shall be paid over " to such person and persons as are *then* by law the lawful ' *heirs-at-law* ' of such * * * niece and in such shares and proportions as they

would by law inherit (as heirs at law) from such * * * niece."

Significant, I think, is the phrase " *then* by law " in the use of which the testator was moved to underline the word " *then*." With commanding force the phrase expresses the testator's intention that the distributees shall be such persons as shall be " the lawful heirs-at-law *of such* * * * niece* " on the date of her death, which in the present case was May 5, 1939. On that date, under the New York statute of descent then effective (Decedent Estate Law [Cons. Laws, ch. 13], § 83, subds. 6 and 10 [L. 1929, ch. 229, § 6], the only person who was "*then* by law " an heir at law of Ellen Battell Stoeckel was the appellant, Rosa E. Tuttle.

The will bears evidence of skilled draftsmanship. If the testator had intended — as the Appellate Division has ruled — that upon the death of a nephew or niece who was a *cestui qui trust* the principal should go to relatives of the testator's own blood, we would expect to find a clear provision to that effect. The preparation of such a direction would have been a simple commission for the expert draftsman. Instead, as we have seen, the accurate use of the word " *then*," underlined by the testator for emphasis, makes the date of death of the life beneficiary a controlling factor and, when considered in its context, serves to designate as distributees those who are " *then* by law the lawful heirs at law of such nephew or niece." In reaching that conclusion — with special reference to the testator's emphasized use of the word " *then* "— I have been influenced by the rule that " Lines of inheritance are governed by statute and it must be assumed that the [testator] knew that those lines could be changed at any time." (*Matter of Koch,* 282 N. Y. 462, 465; *Gilliam* v. *Guaranty Trust Co.,* 186 N. Y. 127, 138.)

The language which we are now construing is similar to the testamentary provision considered in *Matter of Waring* (275 N. Y. 6). There, where the distributees to be ascertained were designated as " the next of kin of the said John, according to the laws of the State of New York," this court

ruled that such language required the application of a statute effective prior to September 1, 1930. But the court added (p. 10): "It was not the estate of the son which passed at his death, nor did it pass by his will. The estate to be distributed at the death of the son was the estate of the father passing under the father's will." In the will involved in the case at bar the testator was careful to use the words — " and in such shares and proportions as they would by law inherit (as heirs at law) from such nephew or niece " — thereby indicating an intention contrary to that expressed in the will considered in *Matter of Waring (supra)*. The intention expressed in the will considered in *Matter of Waring (supra)* was that the property should be distributed as the estate of the testator passing under his will; in the will now before us there is clearly manifest an intention that the trust fund shall pass as the estate of the niece to be distributed as if she, not the testator, died intestate. Accordingly, if the fund had belonged absolutely to the niece, it would follow that upon her death in 1939 it would go to her only heir-at-law, the appellant Rose E. Tuttle. Such, I think, was the test expressly chosen by the testator to determine the distributees.

Of equal importance to our inquiry is the suggestion found in *Matter of Waring (supra,* at pp. 13, 14), " Had the testator here said merely that the remainder should pass according to the laws of the State of New York *in effect at the time of the death of the son,* distribution under the provisions of section 83, subdivision 4, of the Decedent Estate Law might have been made." (Emphasis supplied.) That statement foreshadowed our present problem and suggests the answer. (See, also, *Matter of Koch, supra*.)

It is for these reasons that I dissent and vote to reverse the order of the Appellate Division and affirm the decree of the Surrogate, except as to his ruling upon commissions claimed by the deceased executor.

LEHMAN, Ch. J., FINCH and CONWAY, JJ., concur with RIPPEY, J.; LEWIS, J., dissents in opinion in which LOUGHRAN and DESMOND, JJ., concur.

Order affirmed, etc. (See 286 N. Y. 722.)