In the Matter of the Accounting of MARINE MIDLAND TRUST COMPANY OF THE MOHAWK VALLEY, as Trustee under the Will of HERMAN I. JOHNSON, Deceased. MABEL C. JONES, Appellant. WILLIAM W. ROWLEY et al., Respondents.

Fourth Department, June 27, 1969.

*Penberthy, De Iorio & Rayhill* (*Francisco Penberthy* of counsel), for appellant.

*Felt, Fuller, Hubbard & Hopkins* (*Joseph T. Hopkins* of counsel), for Elizabeth L. Light, respondent.

*Marketos, Rossi & Capecelatro,* for William W. Rowley and another, respondents.

*Paul Scalzo,* guardian ad litem for possible unknown heirs, infants and incompetents, respondents.

WITMER, J. This is an appeal from a decree construing the Eleventh paragraph of the will of Herman I. Johnson, deceased, as requiring distribution of the remainder of the trust fund therein created, to the blood relatives of the testator. The testator executed his will in 1906 and died in 1909, leaving an only child Wallace B. Johnson who was 17 years old when the will was admitted to probate in 1909. In paragraph Eleventh of the will the testator provided, "I give and bequeath to the Utica Trust and Deposit Company [the accounting trustee, under changed name] the sum of twenty-five thousand dollars in trust for the use of my son, Wallace B. Johnson, during the term of his life and upon his death I give and bequeath the same to his heirs at law ". The beneficiary of this trust, Wallace B. Johnson, died unmarried and without issue on August 29, 1967, and the trustee thereupon brought this proceeding for final judicial settlement of its account as trustee and for construction of the will to determine the " heirs at law " of Wallace B. Johnson to whom distribution of the remainder of the trust fund should be made.

The record does not show that all of the heirs at law and next of kin of the testator and of the life beneficiary have been identified, but it does show that at the death of the life beneficiary, a granddaughter of the testator's sister Mary Johnson was living, namely, respondent Elizabeth Lloyd Light (having no issue), and a great granddaughter of said Mary Johnson, through Elizabeth's deceased brother, was living, namely, Dorothy Clasen. These two, of course, are blood relatives of the testator, and the Surrogate's decree favors them. The record also shows that Mabel Childs Jones survived Wallace B. Johnson, and that she was the daughter of William T. Childs, a brother of testator's wife, the mother of Wallace B. Johnson; and thus Mabel Childs Jones is a first cousin of Wallace B. Johnson on his mother's side. She is more closely related to Wallace than is respondent Elizabeth Lloyd Light who is his paternal first cousin once removed (sometimes referred to as a second cousin), and than is Dorothy Clasen who is his paternal first cousin twice removed (sometimes referred to as a third cousin). Under the Surrogate's decree Mabel Childs Johnson is excluded from sharing in the remainder of the trust fund since she is not a blood relative of the testator; and she appeals from the decree.

To determine the persons designated in the will by the phrase "heirs at law" we must look to see the appropriate statute defining such term or phrase (*New York Life Ins. & Trust Co. v. Winthrop*, 237 N. Y. 93). At the time the will was executed and at the time of testator's death section 88 of the Decedent Estate Law provided that where "the inheritance" came through the father (and there being no others in line to take) it should descend to brothers and sisters of the father per stirpes, but if all brothers and sisters have died, to their descendants. Under this section, the trust having been established by the father of Wallace B. Johnson, the remainder must be distributed to the descendants of testator's brothers and sisters, to wit, respondent Elizabeth Lloyd Light, *et al.,* as the Surrogate has ruled.

With respect to personalty, section 98 of the Decedent Estate Law provided that in a case where the descendant (the son, Wallace B. Johnson, in this case)' died unmarried, without issue, ancestors or brothers or sisters or issue thereof, his next of kin should inherit. In subdivision 10 thereof it was provided that, "Where the descendants, or next of kin of the deceased, entitled to share in his estate, are all in equal degree to the deceased, their shares shall be equal"; and in subdivision 12 thereof it was further provided that, "No representation shall be admitted

among collaterals after brothers and sisters descendants ''. If this section of the law is applied in this case, so far as the record now reveals appellant, Mabel Childs Jones, as the maternal first cousin of Wallace B. Johnson, will be the sole beneficiary of the remainder of this trust (*Matter of Morris*, 277 App. Div. 211; cf. *Matter of Samson*, 257 N. Y. 358).

Appellant contends that the Surrogate perverted testator's direction from '' his [the son's] heirs at law '' to the testator's heirs at law. This argument is plausible, but it is specious and without substance. The Surrogate did not designate the testator's heirs at law; he designated the son's heirs at law under the statute with respect to realty (Decedent Estate Law, § 88; Eager, Intestate Succession, § 61).

Appellant further contends that the testator created this trust of $25,000 out of personalty, not realty, and that when the phrase '' heirs at law '' has been used with respect to personalty the courts on many occasions have held that the testator meant '' next of kin '' and have so construed such phrase (see *Montignani* v. *Blade*, 145 N. Y. 111; *Tillman* v. *Davis*, 95 N. Y. 17, 25; *Matter of Meahl*, 241 App. Div. 333; *Matter of Finck*, 168 App. Div. 135). That is quite true, but such interpretations have been made in different contexts. In the case at bar we must be mindful of the dates of the testator's will and of his death, of the admitted professional standing of the draftsman of his will and the effect of an interpretation of testator's words to mean something which he did not say.

We are not at liberty to decide this case as one of first impression and do what we might think the testator should have done. When the testator said '' to his heirs at law '' he made a gift to a class, '' whose membership as well as the extent and quality of their interest were to be determined by the laws in force defining membership in that class at the time of the son's death '' (*Matter of Waring*, 275 N. Y. 6, 10). The above quotation is a paraphrase of language by Judge CARDOZO in *New York Life Ins. & Trust Co.* v. *Winthrop* (237 N. Y. 93, 106, *supra*). Judge CARDOZO was dealing with the remainder of a trust of realty and personalty devised and bequeathed to the life tenant's issue, or if none, to her next of kin, and the court held that the identity of such persons is determined by the statute in effect at the time of distribution, contrary to the English rule. In that case the question of a different statute in effect at the date of the will from that in effect at the date of the death of the life beneficiary was not present. Judge CARDOZO added (p. 108): '' The rule thus emerges that in the absence of clear tokens of

a contrary intention, the statute is to be taken as the standard of division ".

The Court of Appeals has emphasized that in a case such as this it is the estate of the testator and not that of the life beneficiary which is being distributed (*Matter of Battell*, 286 N. Y. 97, 102 and 104; *Matter of Waring*, 275 N. Y. 6, 10–11, *supra*). And the court held in those cases that the law in effect prior to September 1, 1930 applies to wills executed and probated before such date; and that, " There is no meaning to be assigned to ' next of kin ' except the class constituting blood relatives " (*Matter of Waring*, *supra*, p. 13), and that, " The law of decedent at the time the will was made and at the time of the testator's death, of which he was charged with knowledge, would have prohibited the passing of any part of his property to appellant ". (*Matter of Battell*, *supra*, p. 103.)

If there were any ambiguity in the testator's will, of course we should be required to endeavor to ascertain his intent, and, if found, to carry it out. (*Matter of Buechner*, 226 N. Y. 440, 444.) But where the will is free from ambiguity the court has no power to change it (*Matter of Watson*, 262 N. Y. 284, 294). In light of the cases of *Waring* (*supra*) and *Battell* (*supra*, p. 102) there is no ambiguity in this will nor any cause to search for an unexpressed intention on the part of the testator, and the statute defining the meaning of the words " heirs at law " must be applied (*New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93, 108, *supra*).

Moreover, an analysis of the will in this case confirms the application of the *Waring* and *Battell* principles. Except for comparatively minor gifts to charity, to named employees and in paragraph Seventh to his wife's unmarried sister Carrie L. Childs (aunt of appellant Mabel Childs Jones), the testator gave all of his estate to blood relatives. And it should be noted that with respect to the bequest to Carrie L. Childs, he provided that if she should predecease him the bequest should lapse and the amount thereof fall into the residue of his estate under paragraph Twelfth, of which his son and his son's heirs at law were made beneficiaries. He displayed no interest in having this bequest go to the next of kin of Carrie L. Childs, which would include appellant Mabel Childs Jones.

Furthermore, in this will, admittedly prepared by an expert draftsman, at no time did the testator provide that a gift over or remainder should go to the next of kin, but uniformly directed that it should go to the heirs at law, as in paragraphs Sixth, Tenth, Eleventh and Twelfth. And of course he meant " heirs

at law '' as those words were understood according to the law existing prior to September 1, 1930 (*Matter of Waring, supra*; *Matter of Battell, supra*). To be sure, the gifts in paragraphs Tenth and Twelfth include real estate as well as personalty. There can be no reasonable contention that with respect to those gifts (that is, in paragraphs Tenth and Twelfth) the words '' heirs '' or '' heirs at law '' could properly be interpreted as '' next of kin ''. And there is nothing in this will to indicate that in using the words '' heirs at law '' in paragraph Eleventh, the testator meant different persons from those he meant by the same words in paragraphs Tenth and Twelfth. This is particularly true when the effect of appellant's contention is considered, that is, that Mabel Childs Jones, a relative of the son not related by blood to the testator, would inherit all the residue of the trust fund created by the testator in paragraph Eleventh, to the exclusion of testator's blood relatives, as above noted.

As the above cases show, we are not at liberty to apply to an interpretation of this will our present day liberal notions as to who should qualify as relatives. We are dealing with terms carrying fixed property rights (see *Matter of Samson*, 257 N. Y. 358, 362, *supra*). There being nothing in this will to show intent contrary to the established construction of the words used in this will, the Surrogate properly construed the language of paragraph Eleventh as limiting the remainder of said trust fund to blood relatives of the testator. (For another similar holding, see *Matter of Baldwin*, 21 Misc 2d 842.)

The decree should, therefore, be affirmed with costs to the parties filing briefs.

GOLDMAN, P. J. (dissenting). It may not be inappropriate once again to recall Judge LEARNED HAND's caution to be wary of making '' a fortress out of the dictionary '' (*Cabell* v. *Markham*, 148 F. 2d 737, 739) and to note his admonition that there is '' no more likely way to misapprehend the meaning of language * * * than to read the words literally, forgetting the object which the document as a whole '' has sought to achieve (*Central Hanover Bank & Trust Co.* v. *Commissioner of Internal Revenue*, 159 F. 2d 167, 169; see, also, *Matter of Fabbri*, 2 N Y 2d 236, 240). '' A word * * * may vary greatly in color and content '' depending on the intention of its author and the circumstances under which it is used (*Towne* v. *Eisner*, 245 U. S. 418, 425). The majority has chosen to construe the words '' heirs at law '' in a highly literal and restrictive sense and I, therefore, must dissent.

The construction proceedings were limited to paragraph Eleventh of the will which provides in part that " I give and bequeath to Utica Trust and Deposit Company, of Utica, N. Y., the sum of twenty-five thousand dollars in trust for the use of my son, Wallace B. Johnson, during the term of his life and upon his death I give and bequeath the same to his heirs at law ". The Surrogate took proof to construe the words " his heirs at law " in order to determine the class of persons entitled to receive the trust fund on the death of the son, Wallace B. Johnson, which occurred on August 29, 1967. The decree adjudged that the words " his heirs at law " were intended " to designate those entitled to receive the trust fund on the death of Wallace B. Johnson embraces only those heirs of Wallace B. Johnson who are blood relatives of his father, Herman I. Johnson ". Appellant is the daughter of the brother of testator's wife, and therefore, is the first cousin of testator's son, Wallace B. Johnson. Accordingly, she is not a blood relative of testator, but would otherwise qualify as an heir at law of testator's son.

The rule to be followed in construing a will is well settled. It was succinctly enunciated in *Matter of Larkin* (9 N Y 2d 88, 91) that " the prime consideration of all construction proceedings is the intention of the testator as expressed in the will. All canons of construction are subordinate to this consideration. If the testator's intention is not clear then it ' must be gleaned not from a single word or phrase but from a sympathetic reading of the will *as an entirety* and in view of all the facts and circumstances under which the provisions of the will were framed.' (*Matter of Fabbri*, 2 N Y 2d 236, 240, emphasis supplied; *Matter of Gautier*, 3 N Y 2d 502, 509) ". A reading of the will " as an entirety " prompts the conclusion that the testator did not intend to limit his son's heirs to heirs who were also the testator's own blood relatives, but indicates an intention to include all the heirs of his son. The Fifth and Sixth paragraphs make bequests to two sisters. Paragraph Seventh is a bequest to a sister-in-law which, interestingly enough, is substantially larger than the combined bequests to testator's two sisters. Bequests are also made to a cousin, two employees and three eleemosynary institutions. Furthermore, in paragraph Twelfth the testator again makes reference to " the heirs at law of my said son who shall be living at the time of his death ".

Provisions such as the above do not limit those who may inherit under this will. The document is thorough, complete and has clearly expressed the testator's intention. Had testator

desired to exclude certain descendants of his son he could easily have accomplished this end. Had he wished to favor his blood relatives, this too, he could have done in simple and clear language. While blood relatives are favored in construction proceedings if the testator's intention is in doubt, courts cannot rewrite wills to aid blood relatives (7 Warren's Heaton, Surrogates' Courts [6th ed.], §§ 19–21). The will shows no such motivation and, I submit, the Surrogate should not have rewritten the will by his decree to supply an unexpressed intention of the testator.

In limiting distribution to blood relatives the Surrogate stated that since the will was executed before the amendment of the Decedent Estate Law, effective September 1, 1930, it must be construed according to the law as it existed prior to the effective date of the amendment. The Surrogate and the majority of this court rely, as authority for their position, on *Matter of Battell* (286 N. Y. 97) and *Matter of Waring* (275 N. Y. 6). Both of these cases are distinguishable, for the wills made express reference to the " law ". In *Battell* (*supra*, p. 103) the court said " When he said ' *the law* ' he meant ' the law ' and he neither said nor meant that distribution should be made according to some scheme which was not ' the law ' *in effect* at that time." In *Waring* (*supra*, p. 9), the court noted that the testator made a bequest to " the next of kin of the said John, *according to the laws of the State of New York* " (emphasis supplied), and went on to point out, at page 13, that the result arrived at " is in exact accord with the intent of the testator. * * * His intent * * * is clear." In the case at bar, however, the testator made no reference to the existing laws at the time of execution of his will, nor has he indicated any intention to rely on those laws. The intention present in *Waring* (*supra*) is lacking here, and *Waring*, therefore, becomes inapposite. Accordingly, I conclude that the law at the time of the execution of a will may only be applied where a testator demonstrated an intention to rely upon it. The testator, in the case at bar, has indicated no such reliance and no preference for his blood relatives. The decree appealed from should be reversed.

MARSH, MOULE and BASTOW, JJ., concur with WITMER, J.; GOLDMAN, P. J., dissents and votes to reverse the decree in opinion.

Decree affirmed with costs to all parties filing briefs, payable out of the estate.