632 A.2d 221

**Karen M. LANSBURGH, et al.**

v.

**Helen Zeve LANSBURGH.**

**No. 1951, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Oct. 28, 1993.

Nancy S. Grodin (Sheldon S. Satisky and Weinberg and Green, on the brief), Baltimore, for appellants.

Barbara C. Woods (Stanard T. Klinefelter and Piper & Marbury, on the brief), Baltimore, for appellee.

Argued before GARRITY, ALPERT and DAVIS, JJ.

ALPERT, Judge.

This appeal involves litigation between the decedent's widow, on the one hand, and his children from a prior marriage, on the other. Specifically, the decedent's children, having had summary judgment granted against them (and having had their corresponding cross-motion for summary judgment denied), now ask

> [w]hether the trial court erred in granting the Motion for Summary Judgment filed on behalf of [the widow] Helen Zeve Lansburgh, Appellee, and failing to grant the Cross–Motion for Summary Judgment filed on behalf of Karen Lansburgh and NationsBank, as Limited Guardian for the Estate of Robert Marcus Lansburgh, Appellants[?]

We answer this question in the negative, and therefore affirm.

## I.

On November 10, 1924, Jacob Epstein (the "settlor") of Baltimore, Maryland, executed a Deed of Trust for the benefit of his then six-year old grandson, Robert I. Lansburgh (the "trust beneficiary"). All agree that this trust has been administered in Baltimore, under Maryland law, since its creation.

The trust beneficiary died on April 12, 1991, as a domiciliary of the State of Texas. He was survived by a wife, Helen Zeve Lansburgh (the "widow"), and two children by his prior marriage, Robert Marcus Lansburgh and Karen Lansburgh (collectively, the "children") [1]. At the time of the trust beneficia-

---

1. The record reflects that Robert Marcus Lansburgh has been adjudicated an incapacitated person under Texas law, and that there has been appointed both a limited guardian of his property (NCNB Texas Nation-

ry's death, the trust corpus had a value of approximately $1,234,549.00.

At issue is the provision in the Deed of Trust that, upon the trust beneficiary's death, disposes of the corpus of the trust estate. This provision reads, in relevant part, as follows:

[U]pon termination of the trust, that the said widow shall receive such portion of the corpus of the trust estate as she would have been entitled to receive had her husband died intestate and *had the trust estate been part of his estate at the time of his death.*

(Emphasis added.) The relevant (*i.e.*, 1991) intestacy law of the State of Texas (*i.e.*, the trust beneficiary's state of domicile at the time of his death) differed significantly from that of Maryland (*i.e.*, the settlor's state of domicile at the time of *his* death, and the state where the trust was created and administered).

If the subject provision were to be interpreted pursuant to 1991 Texas law, the widow would receive *one-third* of the corpus of the trust, and the children would share equally in the remaining two-thirds. On the other hand, if the subject provision were to be interpreted pursuant to 1991 Maryland law, the widow would receive $15,000.00 plus *one-half* of the balance of the corpus of the trust, and the children would share equally in the remainder.

The subject litigation began on November 6, 1991, when the trustees[2] filed in the Circuit Court for Baltimore City a Petition for Authority to Distribute the Trust. Eventually both the widow and the children filed motions for summary judgment, the former arguing that Maryland law controlled the distribution, and the latter contending that Texas law controlled. A hearing was held on these motions, following

---

al Bank of Dallas, Texas) and a limited guardian of his person (Elaine Levi Lansburgh).

2. The trustees of the subject trust, Richard M. Lansburgh, Robert M. Goldman and Mercantile–Safe Deposit & Trust Co., are not parties to the present action.

which, and pursuant to a Memorandum Opinion and Order dated June 26, 1992, the trial court granted the motion of the widow and denied the cross-motion of the children.

The children subsequently filed a timely appeal.

## II.

■ The primary question in the case *sub judice* concerns which law should govern the distribution of the trust estate— the law of the domicile of settlor (*i.e.*, Maryland), or the law of the domicile of the trust beneficiary (*i.e.*, Texas). The trial court appropriately acknowledged the precedential effect of *Geier v. Mercantile–Safe Deposit & Trust Co.*, 273 Md. 102, 328 A.2d 311 (1974).

In *Geier*, pursuant to the will of Richard P. Ernst, a trust was created to the benefit of several of Ernst's relatives. Ernst had had significant ties to the State of Kentucky, where he had resided during his lifetime. 273 Md. at 104–05, 328 A.2d 311. His will (which was executed in his Cincinnati, Ohio law office, just over the border from Kentucky), however, simply described him as being "of the County of Washington, State of Maryland." *Id.* at 105, 328 A.2d 311. As in the present case, the issue arose as to which law would govern the distribution of the trust estate.

"Turning now to the applicable principles of law," the Court in *Geier* stated, "it is true that the law of a testator's domicile usually will control the administration of his estate, including the construction of his will, absent a contrary expression or contrary intent." *Id.* at 114, 328 A.2d 311. Moreover, as appellants correctly acknowledge, "[p]rimary and paramount is the intent of the testator, to be garnered from the meaning of the words he used throughout the will, as well as in the disputed clause, according to their plain import." *See, e.g.*, *Cole v. Bailey*, 218 Md. 177, 180, 146 A.2d 14 (1958) (concerning whether the heirs were to take per capita or per stirpes). "Intention may be gleaned not only from language or surrounding circumstances but also from the totality of the scheme of disposition." *Madden v. Mercantile–Safe Deposit*

*& Trust Co.,* 262 Md. 406, 412, 278 A.2d 55 (1971) (citations omitted).

### III.

In *Geier,* the Court of Appeals began its analysis by stating the chancellor's finding of fact that

> [i]n the absence of designation or expression of intent by the testator to the contrary[,] the law of the domicile of the testator at the time of his death controls. While there may be doubt as to whether he succeeded, the evidence is clear that the testator intended to die domiciled in Maryland or at the minimum to be considered as domiciled in Maryland at his death so that the administration of his estate is governed by the law of Maryland.

*Id.,* 273 Md. at 113, 328 A.2d 311.

> In the instant case, the trial court opined as follows:

> The settlor of the trust undisputely was domiciled in Maryland. Maryland law is to be used in the trust's construction, unless a contrary intent to use other law is found. Counsel for the [children] maintains that the [disputed] passage is compelling evidence of contrary intent. They believe the settlor "intended for the trust estate to pass as the estate of [the trust beneficiary]." Because Robert died domiciled in Texas, Texas Law of Construction should be used in construing the trust. This Court disagrees with those conclusions.

> \*       \*       \*       \*       \*       \*

> The approach outlined in the case law, the Restatement [ (Second) Conflicts of Law] and its comments, [leads] this Court to conclude Maryland intestacy law should be used in the distribution of the corpus of the trust.

> Maryland is the place of administration of the trust. The list of contacts with Maryland is substantial. The settlor was domiciled in Maryland. The settlor provided for a substitute Maryland Co-trustee. The trust was funded with the preferred stock of a Maryland corporation. The trust

identified a Maryland charity as one of the contingent remaindermen. The settlor named the Safe Deposit & Trust Company of Baltimore as a successor corporate trustee.

The surrounding circumstances and a totality of the trust scheme leads to conclusion that Maryland law is appropriate.

The trust beneficiary was six years old at the creation of the trust. It is unlikely that the settlor, who carefully provided instruction for many contingencies, would prefer distribution of the corpus be left to which of the (then 48) states his grandson would die domiciled sixty-seven years later.

The trial court, in ascertaining the intent of the settlor, properly considered the whole instrument, and not just the disputed provision. *See, e.g., Madden,* 262 Md. at 413, 278 A.2d 55; *Jones v. Endslow,* 23 Md.App. 578, 590, 328 A.2d 339 (1974).

The question thus raised is whether the trial court was legally correct. *Heat & Power v. Air Products,* 320 Md. 584, 591, 578 A.2d 1202 (1990). Appellants, of course, contend it was not. In support of their position, appellants rely on several cases from other jurisdictions, as well as a creative interpretation and application of Maryland law.

### A.  *Maryland law*

Appellants cite *Cole, supra,* as stating what we shall call the "Very Faint Glimpse" test. The essence of the relevant effect of the Very Faint Glimpse test, according to appellants, is that a common law presumption (here, in favor of applying the law of the domicile of the testator at the time of his death) must yield to "a very faint glimpse of a different intention [evidenced by the testator] in the context." *Cole,* 218 Md. at 180, 146 A.2d 14.

Appellants acknowledge that the common law presumption favors the widow, but contend that the settlor did, through the disputed passage, indicate "a very faint glimpse of a different

intention" sufficient to overcome that presumption. Specifically, appellants argue that

In the instant case, the settlor's use of the words "had the trust estate been a part of [the trust beneficiary's] estate" is more than a faint glimpse of an intention that the distribution to [the widow] should be made as though the Trust estate were a part of the trust beneficiary's estate *to be governed by the law of the Trust Beneficiary's domicile.*

(Emphasis added).

■ We note that appellants have apparently misconceived the Very Faint Glimpse Test. Correctly stated, the essence of the test is that, *where the trial court believes that a testator intended for a certain document (here, a trust) to be interpreted in a certain way,* then that intention must be given effect, even if the testator's intention is supported by only slight evidence (*i.e.,* there exists only a "very faint glimpse" of the testator's intent). *See, e.g., Cole,* 218 Md. at 179–181, 146 A.2d 14.

■ On the other hand, the existence of the Very Faint Glimpse Test does *not* mean, as appellants seem to contend, that a trial court *must* find that the common law presumption was overcome simply because *some* interpretation of a subject provision *may* indicate a "very faint glimpse" of a different intent. The Test simply underscores the significance of determining the testator's intent.

We distinguish the present case from *Cole.* In *Cole,* the trial court found, as a matter of fact, that a common law presumption in favor of a per capita distribution was *overcome* by "more than a faint glimpse of an intention that the distribution should" be per stirpes. 218 Md. at 180, 146 A.2d 14. The Court of Appeals affirmed.

In contrast, the trial court in the case *sub judice* found that the relevant common law presumption was *not* overcome.

As stated above, the problematic phrase provided that, under the conditions relevant to this case, the subject trust would be distributed as if *"the trust estate [had] been a part of*

*[the trust beneficiary's] estate at the time of his death."*
(Emphasis added.) Appellants argue that this phrase "can
*only* mean that the trust estate be treated as though it were a
part of [the trust beneficiary's] estate and thereby governed
by the intestacy law of [his] domicile in force at the time of
[his] death." (Emphasis added; other emphasis removed.)

"On the contrary," counters the widow,

this phrase simply ensured (a) that the intestacy law would
be applied with respect to [the trust beneficiary] rather than
the settlor ..., and (b) that the intestacy concept would be
applied to the assets of the Trust as though a part of [the
trust beneficiary's] estate even though those assets are
obviously not a part of his personal estate. If the phrase
was not contained in the Trust Instrument, [the widow]
would be entitled to "such portion of the trust estate as she
would have been entitled to receive had her husband died
intestate," in which case she would receive nothing, because
the trust estate technically is not subject to the laws of
intestacy.

Because the argument of the widow appears reasonable and
is supported by Maryland law, the decision of the trial court
was legally correct.

## B. *Other jurisdictions*

In those cases from other jurisdictions, the respective courts
were asked to interpret language similar to that at bar, but
those courts ultimately approved interpretations more favor-
able to our appellants than did the trial court below.

In *In re Sewart's Estate,* 342 Mich. 491, 70 N.W.2d 732
(1955), the will provided that should any of the testatrix's
beneficiaries predecease her, and "in case such deceased [ben-
eficiary] shall have died intestate, the aforesaid legacy shall be
distributed to the heirs-at-law of such deceased [beneficiary]
in accordance with the laws of intestacy in force at the time of
my death." *Id.,* 70 N.W.2d at 734. The issue there, as here,
was whether the court should apply the law of the testatrix's
state of domicile (Michigan) or of the deceased beneficiary's

state of domicile (Florida). The Michigan Supreme Court (much like the trial court *sub judice*) held that it was the testatrix's intention that the law of her own home state should govern. In so holding, the Michigan court noted that the testatrix had specifically stated that the distribution should be made "in accordance with the laws of intestacy in force at the time of *my* death." *Id.* at 735 (emphasis added). This, the court held, might have been sufficient under the circumstances to indicate the testatrix's intent, noting further (by way of dicta [3]) that

> had it been the intention of [the] testatrix to [apply the law of the legatee's domicile], she doubtless would have referred to the laws of intestacy in force at the time of the death of any legatee[.] This she did not do.

*Id.* Since the settlor in the case at bar *did* "refer[ ] to the laws of intestacy in force at the time of the death of [the trust beneficiary]," appellants argue that, pursuant to the holding in *Sewart,* there was sufficient evidence in the record to support a conclusion that the settlor intended the law of the beneficiary's domicile to govern. We disagree. The *Sewart* court observed that:

> In passing on controversies of this nature courts have repeatedly recognized that the maker of the will was presumably familiar with the laws of his own State and ordinarily without specific information as to statutes in force in other States. Such situation may not be ignored in the construction of the language of a will.

*Id.* at 735.

Appellants also rely on a dissent filed in *In re Battell's Will,* 286 N.Y. 97, 35 N.E.2d 913, *reargument denied,* 286 N.Y. 722, 37 N.E.2d 454 (1941), a case which also concerned whether to apply the law of the domicile of the testator or the law of the domicile of the beneficiary under the will. The majority in *Battell* affirmed the decision of the New York trial court,

---

**3.** The actual holding of the Michigan Supreme Court was that there was insufficient evidence to support the trial court's errant conclusion that the testatrix wanted to apply Florida law.

which (as did the trial court *sub judice* ) applied the law of the domicile of the testator. *Id.* 35 N.E.2d at 915.

The will provision at issue in *Battell* provided that, under certain specified conditions, various property was to be transferred "to such person and persons as are *then* by law the lawful *'heirs-at-law'* " of particular nieces or nephews of the testator. *Id.* at 914 (emphasis in original). Judge Lewis, dissenting, believed, based on the above-quoted language, that "in the will now before us there is clearly manifest an intention that the trust fund shall pass as the estate of the niece to be distributed as if she, not the testator, died intestate." *Id.* at 918.

Notwithstanding Judge Lewis's position, we align ourselves with the majority in *Battell,* and accordingly hold that the plain language of the will currently at issue (when seen in light of the totality of the circumstances, as such was set forth by the trial judge) sufficiently supports the intent of the testator as found by the trial judge.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.