In the Matter of the Estate of MARION BORDEN, Deceased.

Surrogate's Court, Ulster County, November 24, 1931.

*Hardin, Hess & Eder [Ernest Angell, Jerome S. Hess* and *Irving I. Goldsmith* of counsel], for the petitioners.

*Francis Colety,* for John Borden Hamilton.

*Augustus W. Bennet,* for the executors.

*Hurry & Dutton [John A. Dutton* of counsel], for Trustees of the Masonic Hall and Asylum Fund.

KAUFMAN, S. In the present proceeding a construction of the 20th paragraph of the last will and testament of Marion Borden, deceased, which was dated October 17, 1929, and which was

admitted to probate by this court on December 29, 1930, is sought. The paragraph in question, which concededly affects the disposition of both real and personal property having a total value of about $1,371,000, reads as follows:

" *Twentieth.* All of the rest, residue and remainder of my property of whatever nature or sort and wherever situated, I give, devise and bequeath unto the ' Trustees of the Masonic Home and Asylum Fund ' an organization under the jurisdiction of the Grand Lodge of Free and Accepted Masons in the State of New York in trust and for the purpose of establishing and maintaining upon the remaining lands included in Borden Home Farm located partially in Orange and partially in Ulster Counties in the State of New York, a home for members of the Masonic Fraternity, their widows and orphans, along and upon similar lines as the home now maintained by that organization at Utica, N. Y. This devise and bequest is upon the express condition that the graves of my father, John G. Borden, and my mother, Ellen L. Borden, and the surrounding plot located on Borden Home Farm shall be forever preserved and maintained as the last resting place of my father and mother. It is not my intention that the whole of Borden Home Farm as now constituted, shall continue forever to be used for the purpose of such a home, but that my present dwelling house and such portion of Borden Home Farm as is now enclosed in a high wire fence should be so maintained, and in the discretion of those having the matter in charge such other portions of Borden Home Farm as may not be conveniently used in connection with the home may be disposed of and the proceeds of such sales added to the funds hereby bequeathed for the support and maintenance of such home."

The " Trustees of the Masonic Hall and Asylum Fund," designated in the will as " Trustees of the Masonic Home and Asylum Fund," is a New York corporation created by and existing under chapter 272 of the Laws of 1864, as amended, the last amendment being chapter 264 of the Laws of 1923. Section 4 of the last mentioned act reads as follows: " § 4. The objects of the corporation hereby continued shall be to build and maintain a masonic hall or temple in the city of New York for the meetings and accommodation of the Grand Lodge or General Assembly of Free and Accepted Masons of the State of New York, and its officers, and for the accommodation of other masonic bodies, and out of the funds derived from the rent or income thereof, and the funds derived by said corporation from all other sources which may be applicable thereto, to build, establish and maintain in the state of New York an asylum or asylums, a home or homes, with hospital accommodations, a school or schools, for the relief, support and

care of worthy and indigent masons, and worthy and indigent wives, widows, and orphans (half or whole), of masons, and for the free education of children of masons."

By subdivision 1 of section 3 of the act the corporation is expressly authorized and empowered " To take and hold, absolutely or in trust, or both, real and personal property by grant, gift, purchase, devise, bequest or in any other manner, within or without the state of New York, for its corporate purposes,   *   *   *."

Counsel for the petitioners assert that the 20th paragraph of Miss Borden's will creates a trust of her residuary estate and that the trust thus established violates the statutes against perpetuities and is void. The basic question to be determined, therefore, is whether or not the disputed paragraph of the will creates a trust. If it does, the further question of the legality of the trust arises. If it does not, a decision to that effect is determinative of the entire controversy.

After a most careful study of the will in question and of the charter of the respondent corporation, and after a thorough examination of the authorities cited by counsel in their excellent briefs, I am fully convinced that the 20th paragraph of the will of the testatrix does not create a trust at all, but on the contrary effects an outright gift of her residuary estate to the respondent corporation for charitable purposes expressly authorized by the legislative enactments creating it. This conclusion is amply sustained by the authorities. (*Bird* v. *Merklee*, 144 N. Y. 544; *Wetmore* v. *Parker*, 52 id. 450; *Williams* v. *Williams*, 8 id. 525; *Adams* v. *Perry*, 43 id. 488; *Matter of Griffin*, 167 id. 71; *Holland* v. *Alcock*, 108 id. 312; Chaplin Suspension of Power of Alienation [3d ed.], § 510.)

No better language can be used to point out the fallacy of the argument of the petitioners than that of Judge BARTLETT in *Bird* v. *Merklee* (*supra*, at p. 550), where he says: " The fundamental error in this case,   *   *   * is the failure to recognize the fact that gifts to religious and charitable corporations to aid in carrying out the purposes for which they are organized, whether by expending the principal of a bequest, or the income of a bequest to be invested in perpetuity, do not create a trust in any legal sense, do not offend against the statutes of perpetuities, are not to be judged by any of the well known rules pertaining to the law of trusts as applied to private individuals.

" It would be impossible at this late day to add anything to the learned discussion of the foremost judges and counsel of this State in a legal contest which assailed the case of *Williams* v. *Williams* (8 N. Y. 525) in so far as it sustained the English doctrine of trusts

for charitable uses and resulted in establishing that the doctrine had no place in our jurisprudence, but that a system created by the statute law of the state of organized corporate bodies with power to administer public charities, and legal capacity to receive and hold property for that purpose, was intended to take its place. (*Holland* v. *Alcock*, 108 N. Y. 312.)

" Gifts to these corporations can be made without invoking the aid of trusts.

" The mortmain policy of this state is very simple and is illustrated in the charters of our religious and charitable corporations. The amount of property which they may take and hold in mortmain is restricted; but their ownership is absolute and only qualified by their artificial nature. (*Wetmore* v. *Parker*, 52 N. Y. 458.) "

In *Wetmore* v. *Parker* (52 N. Y. 450, at p. 458), Chief Judge CHURCH c early pointed out the distinction which the law makes between gifts for charitable purposes to corporations empowered to take and hold the same beyond reach of the law of perpetuities and those subject to application of the statutes against perpetuities in the following language: " Statutes against mortmain and perpetuity have, in a general sense, a common object to restrain the locking up of property, which prevents its free transmission and use; but they are quite different in their origin, nature and character. Our statutes against perpetuities relate to expectant estates and limitations of future contingent interests in personal estate, and future estates in lands. The mortmain policy of this state is very simple and is contained in each charter creating a charitable corporation. The amount of property which it may take and hold in mortmain is restricted; but its ownership is absolute, and only qualified by its artificial nature. There is nothing *contingent* about it; it is fixed and certain; there is nothing *expectant* or *future* about it; but its interest is immediate and vested. * * *

" The corporation uses the property, in accordance with the law of its creation, for its own purposes; and the dictation of the manner of its use, within the law, by the donor, does not affect its ownership or make it a trustee. A person may transform himself into a trustee for another, but he cannot be a trustee for himself. (Lewin on Trusts, 15.) "

In *Adams* v. *Perry* (43 N. Y. 487, at p. 500), Judge GROVER said: " Such gifts are valid not because they are *per se* excepted from the operation of the statutes, but for the reason that, by their charters, they are authorized so to take and hold property, and thus exempted from their operation."

It is contended, however, that the language of paragraph 20 of the will expressly creates a trust. With that contention I am

unable to agree. While the phrase "in trust" is employed, its context clearly indicates that the intention of the testatrix was to effect an immediate gift rather than create a trust. The words of gift are immediate. There is nothing contingent, expectant or future about them. The testatrix does not even restrict the respondent corporation to the preservation of the principal of her gift by the insertion of any provision limiting it to the use of income only, as she might reasonably and lawfully have done. In fact she clearly indicates that she anticipates that all of the real property other than that part of the Borden home farm which is inclosed in a high wire fence will be sold. There is no appointment of the respondent corporation as a trustee anywhere in the will. Nowhere is it referred to as a trustee. Nor is there any definite beneficiary named for a trust. The Trustees of the Masonic Home and Asylum Fund are not to hold the property and to pay over the income to any other corporation or person, but to establish and maintain a home upon part of the real property devised for members of the Masonic fraternity, their widows and orphans. That is one of the principal things that corporation by its charter is specifically authorized and empowered to do, and in accordance with the long-established law upon the subject the paragraph in question must be held to establish an absolute gift to the corporation for its authorized corporate purposes rather than a trust.

But one other question remains for consideration. It is contended that that part of the 20th paragraph of Miss Borden's will which states, "This devise and bequest is upon the express condition that the graves of my father, John G. Borden, and my mother, Ellen L. Borden, and the surrounding plot located on Borden Home Farm shall be forever preserved and maintained as the last resting place of my father and mother," necessitates the maintenance of a cemetery by the respondent corporation; that such an act is not within the authorization of its charter, and that the gift must, therefore, fail. The clause in question clearly creates a condition subsequent, for the breach of which a forfeiture might be claimed. The corporation under its charter has power to take and hold property by grant or devise, and the imposition of this condition subsequent in the instrument under which it takes does not affect its capacity to take. It may accept the title, subject to a possible defeasance by a breach of the condition. It will be the proper time to determine this matter when a forfeiture is claimed on account of a breach. (*Adams* v. *Perry*, 43 N. Y. 488.)

The will is construed as above indicated, and a decree is directed to be entered accordingly.