In the Matter of the Estate of MARION BORDEN, Deceased.

Surrogate's Court, Ulster County, June 21, 1943.

*John A. Dutton* for Trustees of the Masonic Hall and Asylum Fund, petitioner.

*Nathaniel L. Goldstein, Attorney-General (A. W. Feinberg* of counsel), for the People of the State of New York.

*Richard Netter* for Paul Cahen.

FLEMMING, S.  Under the twentieth paragraph of the will of Marion Borden, deceased, the residue was devised and bequeathed to the Trustees of the Masonic Hall and Asylum Fund, an organization under the jurisdiction of the Grand Lodge of Free and Accepted Masons of the State of New York, in trust and for the purpose of establishing and maintaining upon the remaining lands included in the Borden Home Farm located partially in Orange County and partially in Ulster County in the State of New York a home for members of the Masonic fraternity, their widows and orphans, along and upon similar lines as the home now maintained by that organization at Utica, New York.

The devise and bequest was upon the express condition that the graves of decedent's father, John G. Borden, and mother, Ellen L. Borden, and the surrounding plot located on the Borden Home Farm, shall be forever preserved and maintained as the last resting place of decedent's father and mother.  The decedent further stated that it was not her intention that the whole of the Borden Home Farm as now constituted shall continue forever to be used for the purpose of such a home, but the dwelling house and such portion of Borden Home Farm as now inclosed in a high wire fence should be so maintained, and in the discretion of those having the matter in charge such other portions of Borden Home Farm as may not be conveni-

ently used in connection with the home may be disposed of and the proceeds of such sales added to the funds hereby bequeathed for the support and maintenance of said home.

The decedent's will was admitted to probate by the Surrogate of Ulster County and a petition was filed by Lewis M. Borden and others for construction of the will, particularly the twentieth paragraph thereof, and adjudging and decreeing that the devise and bequest embraced in the twentieth paragraph was illegal, void and of no effect.

The matter was heard before the Surrogate of Ulster County and his decision in that case was that the language of the twentieth paragraph did not create a trust; that while the phrase " in trust " is employed, its context clearly indicates that the intention of the testatrix was to effect an immediate gift rather than to create a trust, and that the paragraph must be held to establish an absolute gift to the corporation for its authorized corporate purposes rather than a trust. Referring to the portion of paragraph twentieth referred to as an express condition as to the graves of testatrix' father and mother located on the farm and providing they should be forever preserved and maintained as the last resting place of testatrix' father and mother, it was held that the clause created a condition subsequent for the breach of which a forfeiture might be created and that the corporation might accept title subject to a possible defeasance by a breach of the condition. That it would be the proper time to determine this matter when a forfeiture is claimed on account of a breach. (*Matter of Borden,* 142 Misc. 44.) On appeal to the Appellate Division, Third Department, the decision of the Surrogate was affirmed by divided court. (236 App. Div. 753.)

The instant proceeding upon petition of the Trustees of Masonic Hall and Asylum Fund seeks a decree approving the sale of the real estate directed by the testatrix to be held for the purpose of establishing and maintaining a home for members of the Masonic Fraternity, their widows and orphans, and included in the sale is that portion of the premises upon which are located the graves of testatrix' father and mother, which it was directed should be forever preserved and maintained as their last resting place. It is claimed by petitioner that a sale of the property if approved by the court would not violate the provision in question which was referred to by the Surrogate as a condition subsequent and would not constitute a breach thereof. It will be recalled that the decision of the Surrogate further provided that the petitioner here might accept the title

subject to a possible defeasance by breach of the condition and that it would be the proper time to determine this matter when a forfeiture is claimed on account of a breach. That time has not arrived. However, the appeal here is to the equity side of the court to relieve the petitioner from the expressed terms and conditions of the decedent's will under which it received the property in question, in other words to permit it to sell the real estate and to use the proceeds of the sale for another purpose of a similar nature in connection with a home established and maintained by it at Utica, N. Y.

In making the sale petitioner proposes to deed the property and as a condition attached to the conveyance provide for the maintenance of the cemetery plot in accordance with the terms and conditions of the twentieth paragraph of the will of testatrix.

It is the contention of the petitioner that the condition subsequent to maintain the cemetery plot follows the land and the vendee for a breach thereof might be subjected to a possible forfeiture of title.

The petitioner invokes the *cy pres* doctrine and the circumstances and conditions as set forth in the record present substantial grounds for the exercise of that doctrine. Apparently, testatrix at the time of the execution of her will had expected that the residuary estate would furnish funds to carry out the purpose she had in mind with reference to the real estate. The personal estate consisted largely of stock in the Borden Company, some 30,000 shares, which at the time of the execution of the will had a market value of eighty-six dollars per share or thereabouts. The year in which testatrix died (1930) the stock reached a high point of ninety and three-eighths dollars per share and a low point of sixty and one-eighth dollars per share. After numerous conferences between the executors and the petitioner an intermediate account was filed and thereafter 29,400 shares of the stock were sold at prices ranging from thirty-two dollars to thirty-five dollars per share. The cash assets which petitioner received were very materially reduced and at the time of distribution of the estate amounted to approximately $26,000.

The Attorney-General appeared in this proceeding and filed an answer to the petition and to the amended petition.

The proposed sale is for the sum of $75,000.

One issue raised deals with the disposition of that portion of the property known as the burial plot where the graves of decedent's father and mother are located. It is urged that

as to this portion of the property the petitioner should not be relieved from the responsibility resting upon it to maintain the plot and that the conveyance should provide for the exception of the burial plot, the title thereto remaining in the petitioner as well as the fulfillment of the obligation for the maintenance and care of the plot.

The jurisdiction of the Surrogate to grant the relief sought is conferred by section 12 of the Personal Property Law and section 113 of the Real Property Law of this State. The provision in the Real Property Law is to the effect that the Surrogate's Court of the county wherein the will is probated shall have jurisdiction concurrent with that conferred upon the Supreme Court and in an appropriate proceeding may make a decree which shall direct that any such devise in the will to religious, educational, charitable or benevolent uses shall be administered or expended in such a manner as in the judgment of the Surrogate will most effectually accomplish the general purposes of such devise without regard to and free from any express restriction, limitation or direction contained in the will. (§ 113, subd. 2.)

The devise and bequest of the residuary estate in the instant case was to a charitable corporation organized under the laws of this State, a body corporate. In *St. Joseph's Hospital* v. *Bennett* (281 N. Y. 115) reference was made to the fact that the Legislature of many years ago enacted statutes providing for the incorporation of charitable corporations and permitting such corporations to hold funds in perpetuity. The statute against perpetuities never applied to gifts to such corporations. The corporate body is legally immortal and it is the very nature of contributions to it to withdraw the subject of them from every kind of circulation, their manifest object being to sustain continually the charitable or religious institutions in carrying out their benevolent designs. Such gifts have been considered not a trust for others but in perpetuity for a corporate purpose.

A portion of the devise here was for a definite, clearly expressed purpose. The record in the instant case justifies a finding that the facts and circumstances existing at the time of the execution of decedent's will changed and changed very materially between the date of decedent's will and her death, to the extent that the residuary interest aside from the real estate, a portion of which is here under consideration, decreased approximately $1,400,000. It was not possible for the petitioner to carry out the directions contained in decedent's will as to

the use and purpose to which the real estate was to be dedicated.

Since the receipt of the residuary interest by the petitioner herein some 400 acres of the real property has been sold for $30,000, also certain small parcels have been disposed of. It appears the cost of carrying the property, after considering the small income derived, leaves a substantial annual deficit. The residence building on the premises is not adapted to use as a home such as maintained and operated by the petitioner at Utica, N. Y., and could not be readily adapted to such use without a large initial capital expenditure which under the related circumstances decedent's residuary estate did not provide and which the petitioner is unable to provide and which it would not be prudent to attempt to raise from other sources. To continue the burden of maintaining the property for any longer period is not justified and the petitioner should be relieved from any further loss in connection therewith by disposing of the property if a sale can be made for a reasonable sum. The contract referred to herein calls for the payment of $75,000.

From all the facts and circumstances connected therewith the court is of the opinion that that sum represents the fair value of the property at the present time; that the circumstances here presented justify the application of the *cy pres* doctrine, and that the substitution to be made, that is the impounding of the proceeds of the sale and the use of the income therefrom for the maintenance and operation of petitioner's home at Utica, N. Y., constitutes the nearest feasible condition and purpose and should be substituted for an impossible one. It follows that the sale will be approved for the sum stated to cover all of the real estate in the petition set forth with the exception of the plot referred to as the cemetery plot in which the graves of the testatrix' father and mother are located. As to this plot the court is of the opinion that the testatrix in selecting the petitioner herein as the residuary legatee had in mind that that portion of the real estate that she referred to as to be used for a home to be established by the petitioner herein similar to that operated at Utica, N. Y., would be so used, established and operated through the years. She felt secure therefore in directing that the graves of her father and mother should remain in the burial plot therein and was of the belief that her wishes in that respect would be carried out by the petitioner and not intrusted to another. The argument presented by the petitioner in opposition to what has been said concerning the burial plot is to the effect that it is a condition subsequent and that a convey-

ance of the real estate in question should include this plot and be made subject to the condition for the care of the burial plot so that in the event of a breach resort might be had against the owners of the servient estate.

The petitioner comes into court seeking equitable relief from what is claimed to be an impossible situation under a doctrine not frequently applied. In granting such relief whatever protection can be given to the expressed desire and direction of the testatrix concerning a matter as personal as the burial plot of her deceased parents should follow. The court is satisfied that the petitioner is not seeking to evade an obligation, but rather believes that the course it seeks to follow will better carry out the objective decedent had in mind.

The Attorney-General has moved to dismiss the petition upon the ground that it does not afford protection to the burial plot and upon the further ground that the court is without jurisdiction to grant the relief sought as affecting the said plot.

The court is not disposed to grant the application to dismiss the petition, without prejudice, and leave the petitioner to a new proceeding and the delay incident thereto provided the protection referred to covering the burial plot can be worked out in the instant proceeding.

A decree may be entered by the petitioner within twenty days from the date hereof, providing for the sale and transfer of the real estate for the sum of $75,000; the funds received from said sale to be held by the petitioner as a permanent fund, the income thereof to be applied toward the support and maintenance of the home maintained by the petitioner at Utica, N. Y.; and the burial plot and the right of access thereto to be excepted and reserved from the sale and retained by the petitioner for the uses and purposes provided in the twentieth paragraph of decedent's will and maintained by the petitioner accordingly.

If a decree is not entered as above provided the motion of the Attorney-General to dismiss the proceeding is granted, without prejudice, and a decree may be entered accordingly.

Either party may hereafter apply to this court for such other and further order or decree to be made at the foot of this decision as shall be necessary or proper.