In the Matter of Construction of the Will of FLOYD C. GETMAN, Deceased. CLYDE J. GETMAN, as Executor of FLOYD C. GETMAN, Deceased, Respondent; LITCHFIELD CEMETERY ASSOCIATION, Appellant.

Fourth Department, June 27, 1968.

*James W.* and *Robert J. Bennison* (*Robert J. Bennison* of counsel), for appellant.

*Fred J. O'Donnell* for respondent.

WITMER, J. By his will dated November 18, 1944 the testator directed that his debts and funeral expenses be paid, and gave the residue of his estate to his brother Clyde to have and to

hold for his natural life, and further provided that upon his brother's death "I give, devise and bequeath my residuary estate aforesaid unto the directors of the Litchfield Cemetery Association of the Town of Litchfield, County of Herkimer, New York, such properties to be received by said Association for the perpetual care of the Getman lot and L. F. Matteson lot in said Litchfield Cemetery."

The testator died October 5, 1954 and letters testamentary were issued to his brother Clyde. In September, 1956 the executor filed a petition in the Surrogate's Court alleging that the fair and reasonable cost of perpetual care of the above-mentioned two lots in the Litchfield Cemetery referred to in testator's will as above quoted was $100 each, totalling $200; that the assets of the estate amounted to an estimated $20,000 (later reported to be $15,336.45), and that the testator died intestate as to the residue of his estate which will remain after the extinction of the life use to Clyde and payment of such sum of $200 for the perpetual care of the two cemetery lots; and praying for construction of the will accordingly. In October, 1956 the Surrogate took evidence on the issue, at which time it was established that the Cemetery Association was incorporated, that each lot had space for eight graves, and that the Cemetery had a regulation charge of $50 to contract to give perpetual care to a lot therein. It also appeared that the testator was a bachelor, and his brother Clyde was his only distributee. Apparently nothing further was done in the proceeding until after the death of the brother Clyde in January, 1965. Administrators c.t.a. were then appointed, and they filed an account showing assets of $14,146.45, less administration expenses. Although the record does not contain a further request for construction of the will, evidently the parties consented thereto on the original petition of 1956 and the hearing then held, the Surrogate before whom the hearing was held being still Surrogate of the county.

In the spring of 1967 the Surrogate construed the will as directing the estate representatives to contract for perpetual care of the two cemetery lots, and that as to the remainder of the estate the testator died intestate. Despite the evidence that the cemetery only charged $50 per lot for furnishing perpetual care, the Surrogate determined that in the light of our inflated economy $150 per lot, or the sum of $300, should be paid to the Litchfield Cemetery for the perpetual care of the two lots. The minority of this court agrees with the Surrogate's construction of the will, but, apparently impressed by the inflationary trend of the economy, would increase the amount to be paid to the

cemetery to the sum of $500 for the perpetual care of each lot or the sum of $1,000 for the two lots.

At the outset we recognized as elementary law that a person cannot disinherit his distributees of assets remaining in his estate except by making a valid testamentary gift thereof to another; and on the other hand that a testator who makes a will is presumed not to have intended intestacy in any respect. It is also clear that where a testator directs his executor to provide for the perpetual care of his burial lot, either the established contract price for such care, or if none, the fair and reasonable value thereof, must be paid, and no more. In fact, the many cases relied upon by the respondents and the Surrogate for limiting the payment to the cemetery in this case, were held to be of this nature. (See *Matter of Zernek,* 11 Misc 2d 749; *Matter of Carney,* 206 Misc. 261; *Matter of Seitz,* 103 Misc. 566; *Matter Young,* 92 Misc. 633.)

It is basic law, however, that a testator has a right to devise and bequeath his property to any person or corporation he chooses, in the absence of express limitation of law (*Matter of Watson,* 262 N. Y. 284, 293–294), and no such limitation has been suggested in this case (see Membership Corporations Law, § 76). Thus, where a testator unequivocally makes a gift of the residue of his estate to a person or corporation for purpose of his burial and maintenance of his grave such a gift is valid and will be enforced even though in the minds of some persons it seems to be an improvident disposition (*Matter of Baeuchle,* 301 N. Y. .582, affg. 276 App. Div. 925, affg. 82 N. Y. S. 2d 371; and, see, *Matter of Morris,* 227 N. Y. 141; and *Matter of Arrowsmith,* 162 App. Div. 623, affd. 213 N. Y. 704; *Matter of Meek,* 113 Misc. 301, 304–305; 1 Butler N. Y. Surrogate Law and Practice, § 117; 4 Jessup-Redfield, Surrogates Law and Practice, § 3324). Such bequest passes to the corporate beneficiary outright and not in trust. (*St. Joseph's Hosp.* v. *Bennett,* 281 N. Y. 115; *Matter of Griffin,* 167 N. Y. 71; *Matter of Staas,* 235 N. Y. S. 2d 490; *Matter of Borden,* 180 Misc. 988, 992; 3 Jessup-Redfield, Surrogates Law and Practice, § 2832.)

We have to determine, therefore, only the question of the testator's intention; that is, did he intend the corporate beneficiary to have the full use and disposition of the funds? This is recognized in the cases regardless of whether the court permits the use of the funds fully for the apparent burial purpose. (See *Matter of Turk,* 128 Misc. 803, 810–811; *Matter of Baeuchle, supra,* p. 377.)

In the case at bar the testator provided in the first paragraph of his will for the payment of his debts and funeral expenses.

The latter, by statute, included provision for payment of the usual perpetual care of the lot in which the testator is buried. (Surrogate's Ct. Act, § 314, subd. 3.) Then, in paragraph Second of his will the testator gave the residue of his estate to his brother for life, and the remainder to the directors of the Litchfield Cemetery Association, adding "such properties to be received by said Association for the perpetual care of the Getman lot and L. F. Matteson lot in said Litchfield Cemetery."

The testator having by the first paragraph of his will authorized his executor, as above noted, to pay the usual funeral and perpetual care expenses of his lot, proceeded to give the remainder of the residue of his estate to the cemetery association. This was an absolute gift, unlimited except for the request that the cemetery give perpetual care to the Getman and Matteson lots. As was said in *Matter of Arrowsmith* (162 App. Div. 623, 626, *supra*): "Nor is it fatal to this gift to the home that it will be impracticable to use the entire interest of the fund bequeathed in the precise manner that the testatrix requested that it should be used. The words of gift are absolute and unequivocal; the direction as to the disposition of the income is merely in the form of a request. It is a well-established rule that whenever a will begins with an absolute gift, in order to cut it down the latter part of the will must show as clear an intention to cut down the absolute gift as the prior part does to make it. (*Lambe* v. *Eames,* L. R. 10 Eq. Cas. 267; *Clay* v. *Wood,* 153 N. Y. 134.) The case last cited is authority for the proposition that mere precatory words superadded to an absolute bequest will not be sufficient to qualify the absolute gift, or impress a trust upon it, unless the intention so to do is clearly expressed in the will itself, for otherwise there would be introduced a repugnancy between the different portions of the will which the rules of construction forbid."

On the question of the testator's intention, we may consider the nature of the problem with which he was confronted. The difficulty inherent in it is emphasized by the decision below and is brought into sharp focus by the position of the minority herein. Presumably, the testator knew that the cemetery rules provided that upon payment of $50 the cemetery association would undertake to give perpetual care to any lot in the cemetery; and such payment could be made for the testator's lot by his executor as part of the funeral expenses. But it was as apparent to the testator as it was later to the Surrogate and this court that the income on $50 would not go far toward maintaining a cemetery lot, and something more was needed to obtain special care. The cemetery would be contractually bound to

tend the lot, but in practice nothing more would normally be done than could in fact be paid for by the income on the contract price for the perpetual care. Recognizing that fact also, the Surrogate directed a 300% payment of the regulation price for such care, presumably upon faith that unknown future directors would give better care to these two lots in accordance with the testator's wishes, by virtue of the larger income from such payment. The minority of this court would raise the amount to 1,000% of the regulation price, likewise with no assurance that the association's promise of perpetual care will be more honored upon receipt of such payment than upon receipt of the regulation price of $50 per lot. One may well question the propriety of any payment of this nature above the standard regulation price per lot, particularly in the absence of a special commitment from the cemetery association with respect to the care of these two lots.

It is not unreasonable to assume that the testator was acquainted with the type of care which the cemetery association gave to its lots under such $50 contracts, and was acquainted with some effects of inflation, considered by the Surrogate and this court. With the proceeds of the remainder of his estate he could visualize a cemetery in substantially better circumstances, better maintained generally, which would reflect on the two lots of his special concern, and a cemetery able to give particularly good care to such two lots, in accordance with its commitment through acceptance of the gift. With no close relative, upon his brother's death, we think it clear that the testator wished his assets used to accomplish such purpose, and that was the reason for his special bequest to the cemetery association. Under these circumstances there is no occasion for the court to intervene to remake or nullify any part of the testator's will, and exercise its discretion as to the reasonable amount needed to accomplish his purpose.

The testator's purpose is clear and in no respect unlawful; and so the decree appealed from should be reversed and the devise and bequest of the remainder of the residuary estate to the directors of the Litchfield Cemetery Association should be construed as a valid and unqualified legacy.

MARSH, J. (dissenting). This is an appeal by Litchfield Cemetery Association from a decree of Surrogate's Court, Herkimer County, which construed the residuary clause of decedent Floyd C. Getman's will.

In 1956 Clyde L. Getman presented a petition for a construction of the residuary clause of the will of Floyd C. Getman, his brother, who died October 5, 1954, leaving a will dated November

18, 1944, which provided in the second paragraph: "Second: All the rest, residue and remainder of my estate, both real and personal, and wheresoever situate, which at the time of my death shall belong to me or be subject to my disposal by Will, I give, devise and bequeath unto my brother Clyde L. Getman, to have and to hold the said estate for and during the term of his natural life. Upon the death of my said brother, Clyde L. Getman, then I give, devise and bequeath my residuary estate aforesaid unto the directors of the Litchfield Cemetery Association of the Town of Litchfield, County of Herkimer, New York, such properties to be received by said Association for the perpetual care of the Getman lot and L. F. Matteson lot in said Litchfield Cemetary."

A hearing was held upon the petition which requested that the bequest for perpetual care be limited to an amount necessary, according to the rules of the cemetery association, to provide perpetual care for the two lots. Mrs. De Sanyus, secretary treasurer of the cemetery association, testified that the amount determined by the association for the perpetual care of the Getman and Matteson lots is $50 each. Counsel stipulated that Litchfield Cemetery Association is located in the Town of Litchfield which contains no incorporated village, which has no post office and is a farming community.

No decree was entered until the death of Clyde Getman who left property interests of around $14,000. A decree was entered on April 10, 1967, construing the residuary clause to provide only so much of the residuary as fair and reasonable for perpetual care ($300) and permitting the rest to pass as in intestacy.

It was the common-law rule that a bequest in trust for the perpetual care of a cemetery plot violated the Rule Against Perpetuities as not being for a charitable purpose. (*Matter of Turk*, 128 Misc. 803.) This was changed by section 114-a of the Real Property Law and section 13-a of the Personal Property Law (now EPTL 8–1.5): "Trust for cemetery purposes. Dispositions of property in trust for the purpose of the perpetual care, maintenance, improvement or embellishment of cemeteries or private burial lots in cemeteries, and the roadways, lawns, hedges, walks, fences, monuments, structures and tombs in such cemeteries or on such private burial lots are permitted and shall be deemed to be for charitable and benevolent purposes. Such dispositions are not invalid by reason of any indefiniteness or uncertainty of the persons designated as beneficiaries, nor shall they be invalid as violating any existing rule against perpetuities. Nothing herein contained shall affect any existing

authority of the courts to determine the reasonableness of the amount of such disposition. Any cemetery association may act as trustee of and execute any such trust with respect to lots, roadways, lawns, hedges, walks, fences, monuments, structures and tombs both within its own cemetery limits and outside of any cemetery under its control but within the county where such cemetery is located, whether or not such power is included among its corporate powers.''

The respondents, intestate distributees of decedent, argue that the gift should be limited to the amount necessary for perpetual care. The above section continues the authority of the courts to determine the reasonableness of the amount as it existed under the case law. (*Matter of Baeuchle,* 276 App. Div. 925, affd. 301 N. Y. 582.)

The will in *Matter of Carney* (206 Misc. 261, 262) provided '' I direct my executors to use the balance of my estate for the keeping of my grave and to use the money as they shall see fit for same.'' The court held that this was not an absolute gift to the representative in trust for the perpetual care of the grave but only so much as is necessary for such perpetual care. In *Baeuchle* the will directed the residuary estate be used for the purchase of a plot, erection of a mausoleum and perpetual care of the plot and mausoleum. The court held the testatrix had unmistakably expressed her intent to use the entire residuary for such purposes. The opinion states however, that only sufficient moneys to provide for perpetual care would be paid to the cemetery. This case merely stands for the proposition that a decedent may spend an extravagant amount for a plot and mausoleum if such an intent is clearly expressed in the will.

In *Matter of Turk* (128 Misc. 803) $9,000 was left to a city owned cemetery for perpetual care of the graves of a couple of limited means. The city's normal perpetual care contract would provide such care for $200. The will provided (pp. 805–806): '' (1) After the payment of all my lawful debts and funeral expenses, I give all my property * * * to the Commissioners of Mount Hope Cemetery of Rochester, N. Y. for the purpose of the perpetual care of [graves of decedent and husband] ''. The Surrogate held that the amount was unreasonable for a trust of perpetual care within the meaning of the enabling act (EPTL 8–1.5) and that the surrounding circumstances indicated that testatrix never intended such a large amount to go for perpetual care. Major emphasis was placed on the near impossibility of expending such a large sum upon the modest plots intended to be benefitted.

*Matter of Morris* (227 N. Y. 141, 143) dealt with a gift of the residuary estate to "my executor hereinafter named to pay funeral expenses, say masses and put a modest tombstone over my remains." There is a statement in the case (p. 144) that "the court may not cut down the gift because the amount is disproportionate to the purpose." The court held that what amount was given to the church for the saying of Masses was of no concern to the next of kin as only the testatrix was competent to judge the reasonableness of such an amount.

*Morris* points to *Matter of Arrowsmith* (162 App. Div. 623, affd. 213 N. Y. 704) for explanation of the distinction between an absolute gift and a direction to expend a specified sum for a given purpose. The court there held that there was an absolute gift and that the added directions were merely precatory and did not create a trust for the limited purposes stated (p. 626): "It is a well-established rule that whenever a will begins with an absolute gift in order to cut it down, the latter part of the will must show as clear an intention to cut down the absolute gift as the prior part does to make it."

The gift in the instant case cannot reasonably be construed as an absolute gift to the cemetery to be used for whatever purposes the cemetery directors deem appropriate. It is a gift soley limited to the perpetual care of the plots of decedent and L. F. Matteson. The words following the gift are an absolute limitation upon the gift and impose a trust whose sole object is such perpetual care.

The facts present a clear case for the exercise of the authority to pass on the reasonableness of a gift for perpetual care (EPTL 8–1.5).

This was not an absolute gift to the cemetery association to be used for general cemetery purposes although such a gift would be permitted under EPTL 8–1.5 but solely for perpetual care of the two lots as clearly stated in the will. As such, it was an unreasonable amount and could be cut down by the Surrogate pursuant to EPTL 8–1.5. (*Matter of Turk, supra.*) It might be pointed out that the cemetery association did not attempt any showing as to how the proceeds of the gift could be used solely for the care of the two lots, nor what would be done with the accumulated income if the excess is accumulated.

In view of increased costs reflecting the inflationary trends in the economy we would fix and determine $1,000 to be the fair and reasonable cost of providing the perpetual care of the Getman lot and the L. F. Matteson lot in the Litchfield Cemetery.

The decree of Surrogate's Court should be affirmed as so modified.

GOLDMAN and HENRY, JJ., concur with WITMER, J.; MARSH, J. dissents in a separate opinion, in which BASTOW, P. J., concurs.

Decree reversed on the law and facts and matter remitted to the Surrogate of Herkimer County to enter a decree in accordance with the opinion, with costs to all parties filing briefs, payable out of the estate.